**Seymour PERLMAN**

v.

**The UNITED STATES.**

**No. 178–72.**

United States Court of Claims.

Jan. 23, 1974.

As Amended on Rehearing and Rehearing En Banc Denied April 5, 1974.*

---

* Judges Kunzig and Bennett dissent as to the denial of defendant's motion for rehearing *en banc.* Judge Kunzig also dissents as to the denial of the motion for rehearing.

John I. Heise, Jr., Silver Spring, Md., attorney of record, for plaintiff. Leonard J. Meiselman, Mineola, N. Y., of counsel.

Karen A. Berndt, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S ALTERNATIVE MOTION TO REMAND

KASHIWA, Judge.

The plaintiff, a classified Civil Service employee and a Veterans Preference Eligible, brought this action to recover salary for the period following the termination of his employment on May 31, 1971, from his position as GS–11, Space System Quality Control Specialist, at the Naval Plant Representative Office (hereinafter "NAVPRO"), Bethpage, New York, less such amount he has received in retirement pay since that date.

The case is presently before the court on defendant's motion for summary judgment or, in the alternative, for remand of the case to the Civil Service Commission, and on plaintiff's cross motion for summary judgment. For reasons hereinafter stated, we deny both parties' motions for summary judgment and allow defendant's alternative motion for remand to the Civil Service Commission.

The ultimate controversy involves the implementation of a reduction in force (hereinafter "RIF"). However, the Government has interposed a defense raising the issue of whether plaintiff's retirement on May 31, 1971, is to be treated as "voluntary." If so, argues the Government, the Civil Service Commission, as well as its Board of Appeals and Review, was correct in deciding that the retirement constituted a jurisdictional bar to appeal of the RIF. If the May 31, 1971, retirement was voluntary, the RIF, scheduled for June 24, 1971, could not and did not occur. Since we have chosen to limit our inquiry to the voluntariness of plaintiff's retirement, it is not necessary to recite, in detail, the various allegations with respect to the RIF issue except insofar as these allegations relate to the voluntariness of the retirement. For purposes of the motions and our limited inquiry, the facts of the case may be summarized as follows.

As we have noted, *supra*, at the time of the termination of his employment at NAVPRO, the plaintiff was serving as a Space System Quality Control Specialist at a grade GS–11 level in Bethpage, New York. He had the status of a Preference Eligible entitled to the guarantees of the Veterans' Preference Act.

Plaintiff was first employed by the Department of the Navy on February 19, 1947, as a Radio Mechanic, at the New York Naval Ship Yard in Brooklyn, New York. He continued his employment with the New York Naval Ship Yard until October 3, 1965, at which time he was employed by the Bureau of Naval Weapons, then located at Bethpage, New York. This facility later became known as NAVPRO. On May 22, 1966, plaintiff was promoted to the position of Space System Quality Control Specialist, GS–1955–11, and he served in this capacity until May 31, 1971. During the period of time between the date of his promotion and May 31, 1971, plaintiff also served for a time at grade GS–12 with the position assignment of Crew Chief in the Quality Division of the NASA Branch of NAVPRO. At all times during the course of his employment, plaintiff received a performance rating of "satisfactory."

Prior to June, 1970, NAVPRO, Bethpage Quality Division, had its inspection

personnel at the GS–11 grade classified in series designations 1955, 1942, and 1936. In June, 1970, the Civil Service Commission issued a single GS–1910 classification series for Quality Control positions which was to supersede the old 1955, 1942, and 1936 titles. The new series designation was Quality Assurance Specialist (Aerospace). The new position standards were sent to the printer from the Civil Service Commission by September 28, 1970.

In 1970 it was decided to reduce the number of personnel assigned to its Quality Division as a result of a cutback in funds and a manpower ceiling reduction. On December 15, 1970, plaintiff and other co-workers requested the initiation of formal grievance procedures to correct what they viewed to be the wrongful establishment of competitive levels by NAVPRO at Bethpage. In the submission to the Regional Office of the Civil Service Commission, plaintiff and the other signatories claimed that improper establishment of competitive levels would allow the retention of low preference and tenure employees and cause a dismissal of high preference and tenure employees. The New York Regional Office, by letter of December 31, 1970, advised that since no RIF notices had been issued, a proper appeal had not been filed and thereby declined to pass upon plaintiff's request.

NAVPRO initiated its RIF program in December, 1970, and segmented it into three stages, with personnel being separated in February, April, and June or July, 1971. NAVPRO did not implement the new standards prior to the issuance of the RIF notices.

On March 26, 1971, plaintiff was issued a RIF notice advising of the abolishment of his position of GS–1955–11, Space System Quality Control Specialist, effective June 24, 1971. At the time, he had a service computation date of June 12, 1943, and was in retention subgroup 1A. The notice advised him that there were no employees in the commuting area whom he had a right to displace.

At approximately the same time as plaintiff's RIF predicament was developing, the Civil Service Commission, on March 16, 1971, issued Bulletin No. 831–34, which directed the attention of the agencies to the possibility of an annuity increase effective June 1, 1971, for employees retiring before that date. The eventual annuity increase of 4.5 percent was not, however, announced as definite until May 4, 1971, by Bulletin No. 831–35.

After the issuance of his RIF notice but before May 31, 1971, plaintiff met with a Personnel Specialist of the Personnel Branch of NAVPRO to determine his position on the retention register and to discuss his personnel rights. Plaintiff was advised that if he would elect to resign by May 31, 1971, he would receive the benefits of an increased annuity of 4.5 percent.

Subsequent to this meeting and a week prior to May 31, 1971, plaintiff inquired of the Personnel Specialist as to the amount of time which he would have subsequent to any retirement on May 31, 1971, in order to perfect an appeal of his rights. The Personnel Specialist was unable to answer but indicated that she would find out. No response was forthcoming so on May 28, 1971, a Friday which was plaintiff's last day of work, he again inquired as to whether he would have appeal rights. She then advised that he would have no appeal rights by reason of his going off the rolls on May 31, 1971. Plaintiff then requested a delay in his separation procedure in order to verify this information from the Civil Service Commission. The Personnel Specialist agreed to a delay until the following Monday in order for plaintiff to verify this information. Plaintiff tried to contact the Civil Service Commission by telephone to ascertain the extent of his rights of appeal and was unable to do so. With only hours remaining in which to make a decision, plaintiff drove to the Civil Service Commission in New York City on Friday, May 28, 1971. But between the time of his conversation with the Personnel Spe-

cialist at Bethpage and the time he reached the Regional Office of the Civil Service Commission in New York on the same day, the office closed. He was therefore unable to ascertain the answer from the Commission to his inquiry concerning his rights of appeal. Thus, the plaintiff, certain that a retirement was required by May 31, 1971, to insure the vesting of the 4.5 percent increase in his annuity, but with no firm knowledge of the effect, if any, of such a decision on his appeal rights, "chose" to retire.[1]

On July 7, 1971, plaintiff appealed to the New York Regional Office of the Civil Service Commission from the RIF contending that NAVPRO did not implement the 1910 job series for the purpose of excluding qualified GS–1955 series positions from their proper level on the retention register. Plaintiff contended that lower retention employees at his competitive level were not subjected to the RIF procedure. Plaintiff further contended that the Senior Naval Officer at NAVPRO had advised personnel of the Quality Division that in the event of any RIF, all billets of the Quality Division would be combined by competitive level on one register. He further advised the Commission that subsequent to the announcement, various transfers and reassignments reflected the interchangeability. Plaintiff went on to claim that in the prior stage of the RIF (effective April 21, 1970), lower retention employees reached in this reduction were offered jobs by "bumping" non-veterans but that these same positions were not offered to the higher retention employees in the later stage of the RIF affecting plaintiff. Plaintiff contended that he had been denied his rights under Subchapter 7 of Chapter 351 of the Federal Personnel Manual in not being offered a continuing position which was held by an employee with lower retention points and standing.

On July 12, 1971, plaintiff furnished the Civil Service Commission with addi-

tional information concerning the RIF. By letter dated July 12, 1971, NAVPRO advised the Civil Service Commission that plaintiff " * * * was to be separated as a result of reduction-in-force effective 24 June 1971, applied for retirement on 27 May 1971, with effective date of 31 May 1971." By letter dated July 23, 1971, the New York Region of the Civil Service Commission declined to accept plaintiff's appeal on the ground that his separation was " * * * a voluntary act on your part and not as a result of reduction-in-force action taken against you by your agency, * * *."

By appeal letter of August 5, 1971, plaintiff appealed the decision to the Board of Appeals and Review of the Civil Service advising that " * * * had I known that an inoluntary (sic) retirement, in this instance, would be looked upon as a voluntary separation from the service, I would not have elected the option." Plaintiff further claimed that NAVPRO officials had notified him that no job offer would be made during the period between May 31 and the scheduled date of the RIF, June 24, 1971. By decision dated September 29, 1971, the Board of Appeals and Review of the Civil Service Commission concurred in the finding of the Regional Office that the appeal was not within the purview of the Commission's appellate jurisdiction.

■ It is the defendant's position that because plaintiff submitted an application for retirement prior to the date of his scheduled RIF, he is thereby precluded from having a review of the RIF. While as a general rule this is certainly the case, the rule has no application when the ostensible retirement is not voluntary. In determining whether or not the plaintiff's retirement was voluntary, we must look to whether the factors operating on his decision-making processes made a voluntary decision impossible and not what the agency officials perceived as plaintiff's condition.

---

1. At oral argument, it was explained that since Monday, May 31, 1971, was a legal holiday, plaintiff actually submitted backdated retirement forms on Tuesday morning, June

1, 1971. This factor does not alter our view of the limited time in which plaintiff had to make his decision.

*Cf.* Manzi v. United States, 198 Ct.Cl. 489, 494 (1972). It is our view that a variety of factors coalesced in the fact-pattern before us to render the retirement "decision" of May 31, 1971, not a voluntary action by the plaintiff.

Plaintiff had been informed that he had no real chance of being reassigned, transferred, or offered a position at NAVPRO or in the New York commuting area [2] prior to the effective date of his reduction on June 24, 1971. There is also no real doubt that plaintiff was aware that his application for retirement had to be submitted as of May 31, 1971, for him to be entitled to increased annuity benefits. The plaintiff, in this predicament, sought to learn whether he could safeguard the 4.5 percent annuity increase while at the same time pursue what he deemed to be his claim arising from a wrongful RIF procedure. In this quest for information, the plaintiff found himself falling ever deeper into confusion.

The plaintiff's first conversation with the Personnel Specialist merely confirmed that an early retirement date (i. e., by May 31, 1971) was the only way that plaintiff could become eligible for the 4.5 percent annuity increase. Plaintiff's inquiries, directed to the Personnel Specialist, taken together with his prompt appeal to the Civil Service Commission, are indications of plaintiff's intent throughout not to abandon his appeal rights with respect to the RIF question. In this regard, it must also be remembered that the plaintiff was a Preference Eligible and thereby qualified for the favorable treatment provided by the Veterans' Preference Act of June 27, 1944, 58 Stat. 387, as amended. This provides additional reason for plaintiff to believe that he had been injured by the RIF procedures.

The Government counters, however, by stating that a person in plaintiff's position cannot put his "head in the sand" and then argue that he did not in fact abandon his appeal rights with respect to the RIF. We find, on the contrary, that plaintiff went to great lengths in attempting to comprehend and pursue his remedies. It was only after the pressures of the possible lack of employment and the presence of a financial inducement placed him on the horns of a dilemma that plaintiff signed the forms indicating his retirement. Plaintiff began to protest the procedure as early as grievance procedures. This avenue December 15, 1970, by way of formal could not be pursued according to the Civil Service Commission because of the lack, at that time, of an adverse action. Throughout, the plaintiff has argued that there was a delay in the implementation of the classification system. The Government admits the delay but argues that, in any event, the plaintiff could not prevail under the new classification. We hold that in this case, at least, it is the very fact of delay which tended to create a situation in which the free expression of choice was not possible. When coupled with the definitive announcement of the 4.5 percent increase less than a month before the retirement date, the factor of financial pressure was added. The situation resolved itself into one of compulsion.

It was not until his last scheduled day of work (Friday, May 28, 1971) that plaintiff was actually informed by the Personnel Specialist of her opinion that a retirement would void his RIF appeal rights. At this late date, and considering the importance of this matter to the plaintiff, it was perfectly reasonable for him to seek verification of her opinion. Attempts were made to contact the Civil Service Commission by telephone, but this proved impossible. Then plaintiff made the drive into New York City only to find the Civil Service offices had closed. The following Monday, May 31, 1971, was an official Government holiday, the Memorial Day celebration. Therefore, plaintiff was forced, by circumstance at the very least, to permit his retirement application to be filed and to perfect his appeal following the effective date of the RIF notice.

It should be noted that the Federal Personnel Manual considers a resignation to be

> \* \* \* an adverse action if it is obtained by duress, *time pressure*, intimidation, or deception. Whether an

---

2. On May 20, 1971, the plaintiff had been notified of an offer of the position of Calibration and Measurement Quality Control Specialist, GS–10, at the West Palm Beach NAVPRO Office. On May 24, 1971, plaintiff notified the proper party that he would not accept the offer.

action is voluntary or involuntary is *determined not by the form of the action, but by the circumstances that produced it.* [Emphasis supplied.] [Federal Personnel Manual Supp. 752–1, subchapter S1–2a(1).] [3]

The combination of the Government's delay in implementing the classification system, taken with the fact of the deadline for qualification for increased annuity benefits, and plaintiff's inability to ascertain, despite his significant efforts, a final answer to his personnel rights inquiries brought to bear upon him the full force of time pressure.

Finally, it should be pointed out that plaintiff was able to retire under the provisions of 5 U.S.C. § 8336(d)[4] because the Civil Service Commission considers a resignation while RIF procedures are in progress to be involuntary for the purposes of retirement. The Government makes the argument that the plaintiff has confused

> \* \* \* involuntary separation, and its application for the purpose and benefit of early retirement, with the fact that his acceptance of early retirement and the 4.5 percent bonus was a voluntary act on his part. \* \* \*

For a person in plaintiff's position, the Government's legal argument—that the retirement is involuntary only for purposes of § 8336(d)—is easily lost. We do not think it other than prudent for plaintiff, in a position of having a matter of hours to make a very significant decision to attempt to verify whether a formal retirement made only to protect the 4.5 percent annuity increase would invalidate his appeal rights with respect to the RIF. Plaintiff has suggested that it might have been possible to work out a conditional retirement. While we need make no comment on this suggestion, it is certainly reasonable for plaintiff to attempt to pursue the inquiry. When no answer was forthcoming until May 28, 1971, and then only after plaintiff had made two requests, we think that an attempt at verification was called for. It should be kept in mind

that the Personnel Specialist countenanced this verification procedure to the extent of allowing the plaintiff to submit his backdated retirement forms on the morning of June 1, 1971. When, due to the lack of time not caused by the plaintiff, the verification could not be completed, we cannot say that plaintiff's submission of his retirement forms to protect the annuity increase constituted, in any real sense, a voluntary retirement.

This court has consistently examined the surrounding circumstances to test the ability of the employee to exercise free choice. We have held, for instance, that the doctrine of exhaustion of administrative remedies has no application when the agency involved had defaulted in its obligation toward the employee by not informing him of his rights or in affirmatively misleading him to believe that he had no rights. See Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967), and the recent decision in Manzi v. United States, 198 Ct.Cl. 489, 495 (1972). Here, we have a plaintiff who had made genuine attempts to decipher the effect of a retirement (made only to qualify for an annuity increase) on his RIF appeal rights. He found himself in a quandary evidenced by the stark contrast between the absence of another position to which to be assigned and the tantalizing promise of an increased annuity made at a late stage in the proceedings. When set against the desperate lack of time caused by the Government's delay in implementing the new classification system, we can be certain that plaintiff's retirement "decision" was not a voluntary choice.

We see no financial prejudice to the Government in allowing the plaintiff to have a review of the RIF action before the Civil Service Commission. A recovery on the part of plaintiff would be reduced by that amount which was received during the interim period by way of retirement.

---

3. See, also, Federal Personnel Manual Supp. 752–1, subchapter S1–2b(3).

4. 5 U.S.C. § 8336(d) (1970):
   "§ 8336. *Immediate retirement.*
   \* \* \* \* \*
   "(d) An employee who is involuntarily separated from the service, except by removal

for cause on charges of misconduct or delinquency, after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to a reduced annuity."
   \* \* \* \* \*

It has been noted, *supra,* that the Civil Service Commission, believing that it had no jurisdiction, has not rendered a decision on the merits of the RIF controversy. We hold that the Commission's decision that the plaintiff's retirement was voluntary is not supported by the substantial evidence. There no longer being an impediment to a review of the merits of the RIF, we, therefore allow defendant's alternate motion and order remand of the case to the Civil Service Commission. The plaintiff's retirement not being voluntary, he is required to present his appeal, in the first instance, to the Civil Service Commission. See 28 U.S.C. § 1491, as amended by Pub.L. 92–415 (August 29, 1972), 86 Stat. 652; Pettit v. United States, Ct.Cl., 488 F.2d 1026, at p. 1034, decided December 19, 1973. Congress has lodged with the Civil Service Commission the duty of administering the civil service laws, such as the promulgation of " * * * regulations for the release of competing employees in a reduction in force * * *." 5 U.S.C. § 3502 (Supp. IV 1968). The Commission has, under the law, promulgated regulations which specify standards for determining whether a particular employee is to be subjected to a RIF. 5 C.F.R. pt. 351 (1969). When a deviation has occurred, the regulations provide for corrective action. 5 C.F.R. §§ 351.902(b), 772.307(c) (1969). An employee who seeks to challenge the RIF is afforded an initial appeal to the Commission. 5 C.F.R. § 351.901 (1969). If dissatisfied, he may appeal to the Board of Appeals and Review of the Civil Service Commission. 5 C.F.R. §§ 772.301, 772.306, 772.307 (1969). In light of the foregoing, it would be totally improper for this court, at this time, to undertake a *de novo* proceeding with respect to the RIF.

The plaintiff noted, during oral argument, that he was skeptical of a hearing before the Civil Service Commission because of the more limited rights with respect to the subpoena power or the calling of witnesses. We see no reason to question, at this stage, the quality or the procedures of the Commission. It is sufficient to state that this court retains jurisdiction of the case and should the plaintiff feel he is being denied a full and fair hearing petition may be made to this court for the rendering of appropriate orders.

## CONCLUSION

Upon the foregoing opinion, the defendant's and plaintiff's motions for summary judgment are denied and defendant's alternative motion for remand is granted. Pursuant to Pub.L. 92–415, 28 U.S.C. § 1491, and General Order No. 3 of 1972, the case is remanded to the Civil Service Commission. Plaintiff's counsel is designated to advise the court, by letter to the clerk, of the status of the remand proceedings as provided for in paragraph 9(a) of the General Order, with said advice to be given at intervals of 90 days or less, commencing from the date of this opinion.

KUNZIG, Judge (dissenting):

In overturning the Civil Service Commission's determination that it lacked jurisdiction in this case, I feel the majority opinion, even in its revised form, expands without justification the concept of involuntary resignation.

The facts are not difficult and bear brief restatement. On March 26, 1971, plaintiff received official notification of his RIF, effective three months later. On May 4, a retirement annuity increase was announced for federal employees separated prior to June 1. This was a standard, government-wide annuity increase option. It by no means reflected a conscious effort to force any particular employee to sacrifice Civil Service appellate rights for higher retirement benefits. Plaintiff was advised in no uncertain terms on May 28 that his resignation to take advantage of the annuity increase would cut off all rights to appeal the approaching RIF. He had no special right to "verify" this advice from his personnel office.

Under these circumstances, it does not make good sense to find the resignation was involuntarily extracted. Plaintiff clearly wanted the financial benefits early retirement brought. He cannot be heard to claim simultaneous retention of employment protections.

The court-developed test is that the element of voluntariness is vitiated only when resignation is submitted under duress brought on by government action. The explicit elements of such duress, which the court here chooses not to apply, are:

     * * * (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no

other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * * *

McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284, 289, cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L. Ed.2d 170 (1969); Pitt v. United States, 420 F.2d 1028, 1032, 190 Ct.Cl. 506, 513–514 (1970).

Because coercion is a necessary element of this test, a former employee's burden of establishing his resignation was involuntarily extracted is a heavy one. Reflecting the case law on the subject, Civil Service regulations point out:

> The fact that the employee may be faced with an inherently unpleasant situation or that his choice may be limited to two unpleasant alternatives, does not make the resulting action an involuntary action.

Federal Personnel Manual (FPM) Supp. 752–1, subchapter S1–2a(3).

Thus, resignations have been held voluntary when submitted in order to avoid geographical reassignment, McGucken v. United States, *supra,* and criminal prosecution, Pitt v. United States, *supra.* *See also* Rich v. Mitchell, 106 U.S.App. D.C. 343, 273 F.2d 78 (1959). Even resignation "under protest" to avoid a charge of gross insubordination has been found voluntary and binding. Cosby v. United States, 417 F.2d 1345, 189 Ct.Cl. 528 (1969).

Resignation· has been found involuntary and thus without legal effect by this court in instances of mental incompetence, Manzi v. United States, 198 Ct.Cl. 489 (1972), and where the employee sought to withdraw the resignation before its effective date, Cunningham v. United States, 423 F.2d 1379, 191 Ct.Cl. 471, (1970). Neither of these special circumstances is here present.

The court cites an FPM provision which lists "time pressure" as one factor reducing apparently voluntary resignation to an adverse action. It is doubtful, however, that the regulation was intended to cover the situation at hand. Duress has been found when the resigning party was required to tender resignation on the spot, without time to consider the move or consult with family members. Paroczay v. Hodges, 111 U.S.

App.D.C. 362, 297 F.2d 439 (1961). On the other hand, however, this and other courts have found as little as three days a sufficient time in which to make a truly voluntary determination to resign. McGucken v. United States, *supra,* 407 F.2d at 1351, 187 Ct.Cl. at 289; Rich v. Mitchell, *supra,* 106 U.S.App.D.C. at 344, 273 F.2d at 79.

In the present case, plaintiff was informed of the opportunity to resign for increased retirement benefits a full four weeks ahead of the option-exercised deadline. As suggested above, the assertion that plaintiff had to "verify" the fact that he would lose administrative appellate rights by resigning represents an effort to inject into the facts an artificial element of "time pressure."

It is manifest that the Government's action in this situation betrayed no coercive element and that resignation was *not* the "only alternative" under the circumstances. Consequently, the Civil Service determination that plaintiff's surrender of his appellate rights was voluntary is supported by substantial evidence. I would dismiss the petition.