**George M. CLIFTON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–4C.**

United States Court of Federal Claims.

July 26, 1994.

**594**

George M. Clifton, pro se.

Virginia M. Lum, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger (Major Patricia Kerns, U.S. Air Force, of counsel), for defendant.

## ORDER

NETTESHEIM, Judge.

This case is before the court after transfer for lack of jurisdiction from the United States District Court for the District of Alaska.[1] Defendant moved for dismissal or, alternatively, for summary judgment. Plaintiff alleges that his discharge after 16½ years of service in the United States Department of the Air Force (the "Air Force") violated applicable military and constitutional rights afforded to him under the Uniform Code of Military Justice and the United States Constitution. The issues to be resolved are whether plaintiff resigned from the military under duress, since he faced possible court-martial, and whether the charges against him

---

1. *Clifton v. Secretary of Air Force,* No. A91–556CIV (D. Alaska Sept. 15, 1993). In its transfer order, the district court incorrectly stated that "the Claims Court does have jurisdiction over claims like Clifton's which are founded upon the alleged violation of his constitutional rights (as well as the constitutional rights of his family members)...." Order at 3. To the contrary, the Court of Federal Claim's Tucker Act jurisdiction extends only so far as a constitutional clause mandates compensation by the Federal Government for the damage sustained. *Dehne v. United States,* 970 F.2d 890, 893 (Fed.Cir.1992) (citing cases). Plaintiff's constitutional claims do not lie within this narrow jurisdiction. The possibility arises that plaintiff may have been whipsawed if the United States Attorneys' Office inaccurately advised the district court concerning the nature of the Court of Federal Claims' constitutional jurisdiction. *See National Steel & Shipbuilding Co. v. United States,* 8 Cl.Ct. 274, 275 (1985). This court frowns upon such unfair legal gamesmanship.

were based on lack of evidence. Argument is deemed unnecessary.

## FACTS

The following facts derive from the record and are not disputed. George Michael Clifton ("plaintiff"), proceeding *pro se*, is a former active duty non-commissioned United States Air Force officer who received numerous commendations, including medals for good conduct, combat readiness, Vietnam service, and humanitarian service. On January 14, 1982, plaintiff reenlisted in the Air Force for a period of six years at the rank of SSgt (E–5) as an aircraft mechanic. The Air Force stationed plaintiff at Elmendorf Air Force Base, at Kenai, Alaska, with the 17th Tactical Airlift Squadron where he served as a flight engineer evaluator.

The circumstances leading up to the events of which plaintiff complains began with an anonymous telephone call on March 26, 1985, to a group entitled Stand Together Against Rape ("STAR"), alleging that plaintiff's stepson James Bryan McSwain, had taken adult books to school and showed them to another boy. STAR relayed this information to the Alaska Department of Health and Human Services, which interviewed James on March 27, 1985. During the interview James accused plaintiff of sexually abusing him. In an interview conducted later that day, plaintiff's stepdaughter Christian Kay McSwain stated that she was also sexually abused by plaintiff.

The Air Force's Office of Special Investigations ("OSI") conducted an investigation and accumulated evidence consisting of the testimony of plaintiff's 11 year-old stepson and 13 year-old stepdaughter, both of whom alleged that plaintiff had sexually abused them. A 16 year-old girl also filed charges against plaintiff for improper sexual acts. In addition, OSI concluded that Clifton had engaged in other illegal sexual acts with his wife. Shortly thereafter the Air Force filed court-martial charges against plaintiff based on these allegations.

Plaintiff states that his military defense attorneys approached him several times, during August–October 1985, concerning the option of applying for a discharge in order to avoid the court-martial charges levelled against him. On September 6, 1985, Col. Milford H. Knutson, Staff Judge Advocate in the Air Force, advised the Judge Advocate assigned to plaintiff's court-martial that the charges against plaintiff, except those related to his wife, were warranted.

Plaintiff signed a statement on October 10, 1985, requesting a discharge in lieu of trial by court-martial, stating that 1) he understood what he was signing; 2) he understood the charges facing him and had received copies of written evidence; 3) he understood the consequences of his signing the resignation form; and 4) he had consulted legal counsel. Plaintiff's attorneys, Major David M. Schneiderman and Capt. Randall H. Kehl, signed the bottom of plaintiff's request verifying that plaintiff's signature was voluntary and that he understood all of the military actions taken against him. By their signatures plaintiff's attorneys also confirmed that "we counseled him fully about: a. [h]is rights and privileges and b. [t]he possible effects of discharge under these circumstances."

On October 10, 1985, Lt. Col. James W. Prouty recommended approving plaintiff's request for an under other than honorable conditions ("UOTHC") discharge, in lieu of pursuing a trial by court-martial. On October 23, 1985, Lt. Gen. David L. Nichols, plaintiff's Commander, approved the discharge, noting that "I have reviewed TSgt Clifton's request for discharge in lieu of trial by court-martial and have received the advice of my staff judge advocate. TSgt Clifton's request for discharge is approved."

By letter dated October 31, 1985, Capt. Kehl requested reevaluation of plaintiff's case under AFR No. 39–10, ¶¶ 4–12 (Jan. 3, 1977), in light of his favorable performance and other evaluations; his potential for rehabilitation; and his "over 16 years of devoted military service, including combat duty assignments." On November 6, 1985, Major Edward Kingsford, Assistant Staff Judge Advocate, recommended disapproval of the request for probation and rehabilitation. Lt. Gen. David L. Nichols denied the October 31 request for reconsideration on November 25, 1985. His denial stated, in pertinent part:

Even though TSgt Clifton has a good performance record, the seriousness of the offense, involving child molestation, outweighs other factors. Retention of an NCO who is perceived as a violator of this type would negatively affect military discipline, good order, and morale to the point that retention of the individual on active duty is not warranted. In addition, TSgt Clifton may very well require the type of psychological therapy the Air Force is not capable of providing.

Thereafter, on February 5, 1986, Deputy Secretary of the Air Force, J. Michael Kelly, stated that the Secretary of the Air Force had directed that plaintiff's approved administrative discharge be executed.[2]

Plaintiff's complaint alleges numerous violations of his civil rights, specifically that his resignation was coerced because his court-martial evidence was insufficient and was obtained illegally by the OSI. In addition, plaintiff alleges that the Air Force provided him with incompetent and ineffective counsel. Plaintiff seeks, *inter alia*, reinstatement with back-pay and retirement eligibility, retroactive promotions, and damages in excess of $1 million.

## DISCUSSION

### 1. *Motion to dismiss/motion for summary judgment*

This motion implicates summary judgment, because both parties rely on the administrative record. A motion for summary judgment based on lack of jurisdiction is treated as a motion to dismiss under RCFC 12(b)(1). *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint.

*Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). The central issue in evaluating such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

 Plaintiff bears the burden of establishing jurisdiction. *Reynolds,* 846 F.2d at 748 (citing cases). Dismissal is appropriate only if "it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). For purposes of passing on a motion to dismiss pursuant to RCFC 12(b)(1), the court is not confined to an examination of the complaint. Instead, the court may consider "evidentiary matters outside the pleadings." *Indium Corp.,* 781 F.2d at 884 (citations omitted).

### 2. *Whether plaintiff's resignation was voluntary*

 The Court of Federal Claims lacks jurisdiction when an officer voluntarily resigns from the military. *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985). Determination of whether a specific resignation or retirement qualifies as voluntary requires an examination of all facts and circumstances. *Covington v. Department of Health & Human Serv.,* 750 F.2d 937, 941–42 (Fed. Cir.1984). The purpose of such a factual inquiry is to ascertain whether the employee exercised free choice in making the resignation or retirement decision. In general, resignations are presumed voluntary. *Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584, 587 (1975); *Heaphy v. United States,* 23 Cl.Ct. 697, 700 (1991), *aff'd,* 972 F.2d 1355 (Fed.Cir.1992) (Table). This presumption endures even if the plaintiff is confronted with "a choice of unpleasant alternatives...." *Sammt,* 780 F.2d at 33.

**2.** On March 6, 1986, the State of Alaska issued a warrant for plaintiff's arrest on charges of molestation and sodomization of several children. Plaintiff was sentenced in May 1986 to 12 years in prison with two years suspended. The Court of Appeals of Alaska affirmed the trial court's decision in part, reducing his sentence to ten years.

The presumption of voluntary resignation, however, is rebuttable in certain circumstances. *Scharf v. Department of Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983); *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587. These cases instruct, for example, that the presumption may be overturned if plaintiff can establish that the government agency wrongfully caused plaintiff duress or inappropriately coerced plaintiff into resigning. Moreover, the presumption may be defeated if plaintiff can establish that the government agency misrepresented information and that plaintiff detrimentally relied on such information. *Scharf,* 710 F.2d at 1575. Finally, the presumption of voluntariness may be vitiated when an employee: 1) "unsuccessfully attempts to withdraw his resignation before its effective date," *see Cunningham v. United States,* 191 Ct.Cl. 471, 481, 423 F.2d 1379, 1384–85 (1970) (finding abuse of discretion in denial of plaintiff's request to withdraw her resignation two weeks prior to its effective date); 2) "submits a resignation under time pressure," *see Perlman v. United States,* 203 Ct.Cl. 397, 406, 490 F.2d 928, 932–33 (1974) (ruling retirement decision involuntary when agency placed undue time pressure on plaintiff to decide within a few hours); or 3) "fails to understand the situation due to mental incompetence," *see Manzi v. United States,* 198 Ct.Cl. 489, 492, 1972 WL 20799 (1972) (holding resignation occurring while plaintiff was mentally disturbed was involuntary). *Scharf,* 710 F.2d at 1574. In the case at bar, plaintiff contends that his discharge was involuntary because it was submitted under duress in response to wrongful government conduct.

### 3. *The duress/coercion exception to the presumption of voluntariness*

■ To fall within the parameters of the duress exception, plaintiff must demonstrate: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587 (citations omitted). Because this is not a disjunctive test, plaintiff must establish all three elements to prevail on a claim of duress and government

coercion. *Information Sys. & Networks Corp. v. United States,* 994 F.2d 792, 796 (Fed.Cir.1993). The duress analysis requires the court to engage in an objective, as opposed to subjective, inquiry into the facts. *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587. Thus, the court focuses on the objective facts of a case, instead of the subjective impressions that a party may offer.

■ Plaintiff alleges that Air Force officials coerced him into requesting an UOTHC discharge. Plaintiff, however, has failed to allege any set of facts, which, if proved, would sustain his plea of duress. To illustrate, the following portions of plaintiff's pleadings allege duress by the Air Force: "[T]he defense attorneys again applied pressure on Clifton to request a discharge." Compl. filed Feb. 14, 1994, at 26. Plaintiff declares that he was "pressured and coerced by military defense attorneys, military officers who initiated the discharge subject, [sic] into requesting a discharge." Plf's Br. filed May 12, 1994, at 18. Plaintiff further alleges that his defense attorneys caused him duress by signing his request for discharge subsequent to his signature and by telling him that he

> "could not present enough evidence to prove his innocence" and that Clifton "would be guilty walking into the courtroom." Defense attorneys, by their coercive statements and lack of investigation, constantly added to the duress that Clifton was under. Wearing away at, and finally destroying, his will to pursue his action within the military courts. [sic]

*Id.* at 19–20.

Focusing on the second element of the *Christie* test, it is understood that the Air Force presented plaintiff with another alternative to applying for an UOTHC discharge: Plaintiff could have foregone requesting a discharge and stood trial by court-martial for the charges the Air Force had brought against him. The above excerpts reveal that plaintiff has not alleged that the Air Force delimited his alternative courses of action to requesting a discharge. The Federal Circuit has ruled that the presumption of voluntariness of a resignation endures even if the

plaintiff is confronted with "a choice of unpleasant alternatives." *Cruz v. Department of Navy,* 934 F.2d 1240, 1245 (Fed.Cir.1991) ("[W]e cannot hold that the bringing of numerous, valid, serious and sustainable charges of conduct ... constitutes coercion to resign."); *accord Sammt,* 780 F.2d at 33. Thus, it is beyond doubt that plaintiff can prove no set of facts that can satisfy the second element of the *Christie* test.

Since the three elements required to establish duress must be conjunctively proved by plaintiff, the court need not address the other two elements of the *Christie* test. Assuming, *arguendo,* that plaintiff had satisfied the second *Christie* element, plaintiff nevertheless cannot meet his burden regarding the other two elements. For example, the record is devoid of any facts that would support an inference that plaintiff either involuntarily accepted the terms of the Air Force in submitting his request for discharge, or acted as a result of circumstances that were the result of coercive acts of the Air Force. Indeed, plaintiff and his attorneys drafted his October 10, 1985 request for discharge "in lieu of trial by court-martial," and plaintiff certified by his signature that he understood the elements of the offenses with which he was charged and that he understood that he possibly would be "discharged under other than honorable conditions...." Furthermore, plaintiff's attorneys certified on the same document that plaintiff's statement was voluntary and signed by him after they counseled him about his rights and privileges and the possible effects of discharge under these circumstances. Plaintiff therefore has failed to allege sufficient facts that would tend to rebut the presumption that his request for UOTHC discharge was voluntary. The fact that plaintiff's discharge was voluntary deprives this court of subject matter jurisdiction. *Sammt,* 780 F.2d at 33.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss or, in the alternative, for summary judgment, is granted. The Clerk of the Court shall dismiss the complaint without prejudice for lack of jurisdiction.

IT IS SO ORDERED.