NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3149

SHERI P. JOHNSON,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

_____

DECIDED: March 9, 2006

_____

Before NEWMAN, MAYER, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

## DECISION

Sheri P. Johnson, a former cemetery representative for the Department of Veterans Affairs ("DVA"), petitions us from the Merit Systems Protection Board ("MSPB"), which denied jurisdiction over her removal claim. The administrative judge ("AJ") found that Johnson failed to allege facts that show she involuntarily resigned from the position. Because the MSPB's jurisdiction does not cover voluntary removals, the AJ dismissed the case. The initial decision was made final by the board on January 28, 2005. We <u>affirm</u>.

BACKGROUND

Johnson began work with the federal government on December 25, 1992. She was appointed as a Cemetery Representative for the National Cemetery in Leavenworth, Kansas on August 11, 2002. Several months later on November 25, 2002, she received a "Notice of Unacceptable Performance" explaining that she violated agency policy by, among other things, scheduling internments without identification, failing to properly schedule burials, and scheduling multiple internments at the same time. On January 13, 2003 the DVA notified Johnson of her deficient performance again. She was given 90 days to improve performance.

In June of 2003, Johnson was informed that she was still failing to meet certain requirements of "Organizational Support." She was given another 35 days to improve performance, and, in July of 2003, the DVA notified her that she did improve but warned that she could be removed if she failed to maintain a satisfactory level of performance. After further unsatisfactory performance from July through October, the DVA proposed her removal on November 3, 2003.

Johnson responded to the removal notice on November 17, 2003 taking responsibility for the errors she made but claiming that she had insufficient time and training to learn the position, that her degree negatively impacted her position, and that she was not represented by the union. On January 2, 2004, the deciding official issued a decision to remove Johnson on January 29, 2004.

The day before her scheduled removal, on January 28, 2004, Johnson met with a human resources assistant, Marylin Buzzell, who was responsible for processing

actions such as removals and resignations. In Buzzell's declaration, she admitted to meeting with Johnson and summarized the meeting as follows:

> 3. During our meeting, the Appellant asked me what I would do if I had the choice to resign or be terminated. Initially, I responded that the decision was hers and that it was a uniquely individual decision. I gave this response to the Appellant despite her repeated requests. Finally, however, I told the Appellant that personally, I would resign. I did not offer any further explanation as to why I would make that choice.
>
> 4. At no time did I advise the Appellant that resignation was a better option than termination. At no time did I discuss any benefits associated with resignation or any other advantages I feel resignation might have as opposed to termination. My comment to the Appellant was limited to the statement that I would resign rather than be terminated.

At the end of the meeting, Johnson signed a handwritten note resigning her position as cemetery representative effective January 28, 2004. On the same day, the DVA issued a Form 50-B documenting her resignation.

In her pro se response to the jurisdictional issue, Johnson claimed that the resignation was involuntary because (1) her grandfather died the week of her removal and the funeral was being held January 30th, (2) the Agency officials urged her to resign rather than be terminated, (3) the deciding official continually asked her employment status, (4) Buzzell advised her to resign in lieu of termination. Taking these facts as true, the AJ found that Johnson failed to allege a claim of involuntary removal because there was no "evidence that the resignation was obtained through duress, coercion, misinformation, or some other condition precluding a voluntary decision."

## STANDARD OF REVIEW

We review questions of MSPB jurisdiction de novo. See Butler v. Social Sec. Admin., 331 F.3d 1368, 1371-72 (Fed. Cir. 2003). In constructive removal cases where

05-3149                                    3

a petitioner was not afforded an evidentiary hearing on the jurisdiction, we must determine whether the petitioner made a non-frivolous allegation of jurisdiction that entitles her to an evidentiary hearing where she may establish jurisdiction by a preponderance of the evidence. See Garcia v. Dep't of Homeland Sec., ___ F.3d ___ (2006).

## DISCUSSION

Employee removal actions are appealable to the MSPB. See 5 U.S.C §§ 7701, 7512. For a removal to be covered by § 7512, however, it must be involuntary. See Schultz v. United States Navy, 810 F.2d 1133, 1135-36 (Fed. Cir. 1987). From the outset, resignations are presumed to be voluntary. Id. at 1136. However, a petitioner may prove her resignation was involuntary if "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." Shoaf v. Dep't of Agric., 260 F.3d 1336, 1341 (Fed. Cir. 2001). Essentially, we ask whether, under all the circumstances, an employee has been deprived of free choice. See id. at 1342. If, on the other hand, the employee is merely faced with a choice between two unpleasant alternatives, either resign or be removed for cause, then such a choice is not involuntary. See Schultz, 810 F.2d at 1136.

We have recognized several situations where an employee's resignation may have been involuntary. They include:

> (1) an employee resigns under duress brought on by government action, (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, (3) an employee submits a resignation under time pressure, . . . (4) an employee fails to understand the situation due to mental

incompetence, . . . [and (5) the resignation was] obtained by agency misrepresentation or deception.

Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983) (citations omitted). Here, Johnson suggests that her resignation was involuntary due to time pressure, duress, and/or misrepresentation. Taking her allegations as true we may assume that in the last week of work Johnson was repeatedly asked by DVA officers when her last day of work would be, and she was advised by the Human Resources Department to resign. Without more, these actions do not raise a non-frivolous allegation that her decision to resign was involuntary or somehow coerced.

Courts have, on occasion, allowed employees to appeal when faced with insufficient time to make the resignation decision, e.g., Perlman v. United States, 490 F.2d 928 (Ct. Cl. 1974), but these instances usually require that the agency demand an immediate decision. See Staats v. U.S. Postal Serv., 99 F.3d 1120, 1126 (Fed. Cir. 1996) (two weeks to decide whether to resign was not sufficient time pressure to make the choice involuntary). In Perlman, the Court of Claims held that an employee's decision to retire was involuntary when he had inadequate time to determine his appeal rights and inadequate assistance to inform him of his rights. The employee was notified that he would be terminated in a RIF on June 24, 1971. Id. at 930. He was later informed by a personnel specialist that he could retire by May 31, 1971 and receive a greater annuity benefit. Id. In an interest to protect his appeal rights, he sought advice from the Civil Service Commission ("CSC"), but he was unable to contact the CSC and determine his appeal rights. Facing the deadline, he was forced to retire in order to preserve the financial benefit of the increased annuity. Id. at 931.

To establish involuntary removal by misinformation or deception, we do not require intentional misinformation. Covington v. Department of Health & Human Services, 750 F.2d 937, 942 (Fed. Cir. 1984). Negligent or innocent misinformation will suffice if the employee relied on the misinformation to his or her detriment. Id.

In the present case, the allegations that she was under time constraints and pressure to make the decision do not overcome the fact that there was a decision to be made. Without more, repeated requests by agency supervisors and officials asking when her last day would be do not rise to the level of no realistic alternative but to resign.

Likewise, her contention that Bruzzell advised her to resign is no indication that the agency has somehow misled her into believing that her appeal rights would be secure or that the agency misinformed her of the consequences. Johnson had three-and-a-half weeks to make her decision after the deciding official announced her removal. This was sufficient time for her to make an informed decision and her allegations fail to raise any facts of coercion, duress, or deception on the part of the DVA.

## CONCLUSION

The MSPB denied Johnson's appeal because it lacked jurisdiction. For the reason stated in this opinion we find no reversible error. Accordingly, we affirm.

No costs.