NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**GARTH K. TRINKL,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

_____

2017-1378

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-16-0387-I-1.

_____

Decided: March 30, 2018

_____

J. DEREK MCCORQUINDALE, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, argued for petitioner. Also represented by DANIEL CRAIG COOLEY; JOSE M. RECIO, JASON LEE ROMRELL, Washington, DC.

STEPHEN FUNG, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by KATHERINE M. SMITH, JEFFREY A. GAUGER.

_____

Before NEWMAN, LOURIE, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.

Dissenting opinion filed by *Circuit Judge* LOURIE.

REYNA, *Circuit Judge.*

Petitioner Garth K. Trinkl seeks review of the decision of the Merit Systems Protection Board, sustaining the Initial Decision of the Administrative Judge dismissing Trinkl's appeal from an alleged involuntary retirement. Trinkl claims that multiple incidents during his employment created a hostile work environment and led to his involuntary resignation. Because the Board improperly concluded that Trinkl failed to present non-frivolous allegations of jurisdiction, we vacate the decisions below and remand for a jurisdictional hearing.

BACKGROUND

Trinkl was an economist with the Department of Commerce in the Bureau of Economic Analysis ("BEA") from 1998 to his retirement in 2015. During his service to the agency, Trinkl received numerous "high quality" ratings related to his job performance.

In 2007, Howard Krakower was appointed as Trinkl's first line supervisor. In 2013, Trinkl submitted a complaint to the BEA's Human Resources Division, alleging that he had overheard Kurt Kunze, Trinkl's second line supervisor, refer to older employees as the "peanut gallery." J.A. 228–29. Trinkl and a fellow BEA employee also observed Kunze push another agency employee into a wall.

Subsequently,[1] Trinkl alleges that he endured a "near-physical" attack from his supervisors Krakower and

---

[1]    Trinkl's amended petition before the Board alleges that this event took place in October of 2013. J.A. 143,

Kunze. Specifically, Krakower and Kunze met with Trinkl for a mid-year performance review; Trinkl claims that during the meeting, he stood up to protest false allegations concerning his performance deficiencies and was yelled at to sit down. Trinkl further alleges that when he announced he was leaving the review and walked towards the conference room door, Kunze yelled to Krakower to stop him, and Krakower "quickly rose and came within inches and micro-seconds of grabbing and restraining" Trinkl from opening the door. J.A. 5. Trinkl allegedly yelled at Krakower not to touch him and left the room. Trinkl claims that he left the meeting room in great fear and immediately reported the incident by telephone to a Physical Security Officer. Trinkl provides emails with the Officer discussing the incident. J.A. 95, 185–86.

Trinkl claims that the "near-physical attack," coupled with his recollection of the earlier incident of another employee being pushed against a wall, left a profound impact on him and exacerbated Trinkl's preexisting post-traumatic stress disorder ("PTSD"). Trinkl alleges the agency nurse was aware of Trinkl's PTSD condition, and provides an email describing how he sought refuge in the nurse's station to avoid meeting with Krakower and Kunze. J.A. 186.

Trinkl alleges that after the "near-physical" attack, he had been instructed by the Physical Security Officer not to meet with his supervisors Krakower and Kunze in person. Trinkl provides emails in which he requests assistance from other supervisors in maintaining physical

144, 149. Other documents in the record suggest that the event in question took place in April of 2014. J.A. 102, 109. Trinkl alleges that his PTSD caused him to have difficulty recalling the exact date of the incident. J.A. 149.

distance from Krakower and Kunze. J.A. 296. In September 2014, Krakower and Kunze sent emails to Trinkl for performance reviews, to which Trinkl replied that he had been advised against meeting with the two men in any setting. J.A. 193.

On August 27, 2014, the Human Resources division of the Census Bureau finished its administrative investigation into Trinkl's separate allegations of harassment and retaliation, concluding that "[t]he investigation revealed that there is no conclusive evidence to suggest that [Trinkl had] been subjected to prohibited harassment, based on age and retaliation/reprisal." J.A. 187.

On October 31, 2014, Trinkl submitted an Application for Immediate Retirement, and indicated that he wished to retire because he no longer felt safe working at the agency "due to reported supervisory threats and violence." J.A. 215. Trinkl chose a final separation date of January 10, 2015, but in the interim requested transfer to new supervisors. The transfer request was denied because Trinkl had been placed under a Performance Improvement Plan ("PIP"), reviewed by Krakower. Trinkl claims he was further harassed by Krakower after submitting his separation paperwork. Trinkl continued to refuse to meet with Krakower and Kunze in any capacity until he retired on January 10, 2015.

On February 25, 2016, Trinkl filed an appeal with the Board alleging that he had involuntarily retired due to coercion and agency deception and misrepresentation. After reviewing the incidents above, the administrative law judge ("ALJ") issued an Initial Decision granting the government's motion to dismiss for lack of jurisdiction on the basis that Trinkl failed to state a non-frivolous allegation that his retirement was involuntary due to misrepresentation or coercion. J.A. 18–19. Accordingly, the ALJ found that the Board lacked jurisdiction over Trinkl's discrimination claims. *Id.* The Board subsequently

issued a final order affirming dismissal, which Trinkl appealed to this court pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Whether the Board has jurisdiction over an appeal is a question of law that we review de novo. *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995). We review the Board's underlying factual findings for substantial evidence. *Parrott v. Merit Sys. Prot. Bd.,* 519 F.3d 1328, 1334 (Fed. Cir. 2008).

"Resignations are presumed voluntary, and the burden of showing that the resignation was involuntary is on the petitioner." *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). An employee asserting claims of involuntary retirement on the basis that the agency coerced the employee to retire must show that the agency effectively imposed the terms of the employee's resignation, the employee had no realistic alternative but to resign or retire, and the employee's resignation or retirement was the result of improper acts by the agency. *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001). To objectively determine whether a reasonable person in the employee's position would have felt compelled to resign, the tribunal must consider the totality of the circumstances. *Id.* A retirement will not be deemed involuntary where the employee retires simply because he "does not want to accept [actions] that the agency is authorized to adopt." *Terban*, 216 F.3d at 1025 (alteration in original) (quoting *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996)). "When determining whether a resignation was involuntary, the MSPB examines 'the surrounding circumstances to test the ability of the employee to exercise free choice.'" *Lentz v. Merit Sys. Prot. Bd.*, 876 F.3d 1380, 1384 (Fed. Cir. 2017) (quoting *Perlman v. United States,* 490 F.2d 928, 933 (Ct. Cl. 1974)).

"The [Board] possesses jurisdiction over an appeal filed by an employee who has resigned or retired if the employee proves, by a preponderance of the evidence, that his or her resignation or retirement was involuntary and thus tantamount to forced removal." *Shoaf*, 260 F.3d at 1341. Once a claimant makes a non-frivolous allegation of MSPB jurisdiction, he is entitled to a jurisdictional hearing. *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1325, 1330 (Fed. Cir. 2006) (en banc); *Shoaf*, 260 F.3d at 1341 n.2 ("When there is a question as to the voluntariness of a petitioner's resignation or retirement and the petitioner makes a non-frivolous allegation of that involuntariness, . . . an evidentiary hearing is required to determine whether the resignation or retirement was in fact involuntary." (citing *Braun v. Dep't of Veterans Affairs*, 50 F.3d 1005, 1008 (Fed. Cir. 1995))). Non-frivolous allegations of jurisdiction are those that, if proven, can establish jurisdiction. *Garcia*, 437 F.3d at 1330.

In the Initial Decision, the ALJ found that "the one-time display of 'non-verbal aggressive behavior,' would not constitute working conditions that were so difficult that a reasonable person in the appellant's position would have felt compelled to retire." J.A. 17. The Board similarly concluded that given the length of time between the alleged near-physical altercation, the physical altercation witnessed by Trinkl, and Trinkl's eventual retirement meant that Trinkl failed to make a non-frivolous allegation of involuntary retirement. The Board stated that "given the lapse in time between these incidents in 2007 and 2013 and the appellant's January 10, 2015 retirement, they are not particularly probative evidence of involuntariness of the appellant's retirement," and that "the lack of clarity in the record regarding when the 'near physical attack' occurred . . . reduces its probative value." J.A. 6. The Board also considered Trinkl's requests for reassignment and allegations about being placed on the

PIP, and dismissed each as insufficient non-frivolous allegations of involuntary retirement.  J.A. 7–8.

The question at this stage is whether Trinkl has non-frivolously alleged circumstances such that a reasonable person in Trinkl's position would have felt compelled to resign.  On that question, we reach a conclusion different from that of the Board.  Considering Trinkl's allegations of his experiences at the BEA collectively, rather than dismissing them one by one, as the Board did, we find that a person in like circumstances could reasonably feel unable to exercise free choice and compelled to retire.  Specifically, Trinkl alleges that after serving the agency for several years with favorable reviews, he experienced multiple instances of hostility from his first- and second-line supervisors, Krakower and Kunze, culminating in a near-physical attack in a small, closed room.  Trinkl reported the incident and consistently refused to meet with his supervisors in person following the attack, resorting even to hiding in the nurse's station to avoid meeting with Krakower and Kunze.  Trinkl submitted his retirement paperwork approximately two months after the investigation into his now-dismissed discrimination claims against Krakower and Kunze concluded.  Prior to actually retiring, Trinkl was placed on a PIP reviewed by Krakower.  Trinkl also sought transfer away from Krakower and Kunze but was denied.  In light of Trinkl's allegations of threatened violence and compounded PTSD, being forced to continue working with Krakower and Kunze created working conditions so intolerable for Trinkl that he could reasonably feel driven to resign.  We conclude that, viewed in totality, Trinkl makes a non-frivolous claim of involuntary retirement.  Such a "non-frivolous allegation is all that is required to trigger the Board's jurisdiction at this threshold stage."  *See Braun*, 50 F.3d at 1008.

The Board erred in considering and dismissing Trinkl's allegations individually, rather than viewing

Trinkl's claims collectively as a series of escalating incidents culminating in his retirement. The Board further erred by considering the relative probative value of Trinkl's allegations over time and discounting the probative value of the alleged near-physical attack due to uncertainty as to when it occurred. *See* J.A. 6. Weighing allegations as more or less probative is appropriate only following a jurisdictional hearing. *See Terban*, 216 F.3d at 1024 (discounting events that occurred long before retirement as less probative to the voluntariness inquiry following an evidentiary jurisdictional hearing).

## CONCLUSION

Because the Board improperly concluded that Trinkl failed to present non-frivolous allegations of jurisdiction, we vacate the decisions below and remand for a jurisdictional hearing.

### VACATED AND REMANDED

## COSTS

No Costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GARTH K. TRINKL,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2017-1378

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-16-0387-I-1.

---

LOURIE, *Circuit Judge*, dissenting.

I respectfully dissent. Mr. Trinkl voluntarily retired.

There is no doubt that Mr. Trinkl was not happily situated in his job when the events recited in the majority opinion occurred. He may feel that he was not treated well, and the "near-physical attack" in November 2013 was certainly not pleasant. But the Board determined that the totality of Mr. Trinkl's evidence indicated that his workplace environment was not so severe that his retirement was coerced. We owe deference to those findings of the Board.

The ultimately persuasive factor in this appeal in my view, aside from deference, is that it took until October 31, 2014, fully 11 months after this "near-physical attack" for Mr. Trinkl to submit his resignation, in which he mentioned that he felt unsafe in his work environment, and until January 10, 2015, almost another 3 months after that for Mr. Trinkl to resign. In the interim, Mr. Trinkl was issued a performance improvement plan, and he requested a transfer. But these were not evidence of coercion, and the main event seemed to be the "near-physical attack."

Aside from the standard of review, which we are required to observe, it hardly seems credible that one could find a retirement to have been coerced when the most serious precipitating event occurred 14 months before the retirement. If Mr. Trinkl had resigned shortly after that event, one might understand that the retirement might have been coerced. But this one seems to have been the product of extended and prolonged contemplation, and hence was voluntary.

The full two-person Board, affirming the administrative judge, so found and we are obligated to defer to that ruling.