**Rodney L. SHRADER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 94–644C.**

United States Court of Federal Claims.

Sept. 17, 1997.

John A. Wickham, Gary Myers & Associates, Evergreen, CO, attorney of record for plaintiff.

John S. Groat, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David M. Cohen, Director, and Assistant Attorney General, attorneys of record for defendant.

## OPINION

HORN, Judge.

This case comes before the court on the defendant's motion to dismiss and the parties' cross-motions for summary judgment. Defendant's motion to dismiss was filed pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC) and the cross-motions for summary judgment were filed pursuant to RCFC 56.1 for review on the administrative record.

Plaintiff, Rodney L. Shrader, initiated this suit pursuant to 28 U.S.C. § 1491(a) (1994) and the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* (1994). Plaintiff sought a declaratory judgment and monetary relief in an effort to overturn the decision of the Air Force Board for Correction of Military Records (AFBCMR) regarding his eligibility for the Voluntary Separation Incentive/Selective Separation Bonus (VSI/SSB) programs on the date of his separation from the United States Air Force. Plaintiff requested that the AFBCMR's denial of eligibility be declared arbitrary and capricious, an abuse of discretion, and a violation of law. Further, plaintiff asks this court to order the defendant, the United States, acting through the Department of the Air Force, to allow Mr. Shrader to select the VSI or the SSB program, as of the date of his separation from

the Air Force, and to compensate plaintiff for all benefit payments which would have accrued from that date to the issuance of this court's order.

In response to plaintiff's complaint, defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment. Defendant contends that this court does not have jurisdiction over plaintiff's claims because the relevant statutes are not money mandating and that the court cannot issue a declaratory judgment in accord with plaintiff's request. Defendant argues that plaintiff has failed to state a claim upon which relief can be granted because the Air Force was exercising the broad discretion accorded to the Secretary of the Air Force when determining the eligibility of personnel for the VSI/SSB programs. Finally, and alternatively, defendant argues that if the court reaches the merits of this case, summary judgment should be granted in favor of the defendant because the AFBCMR's denial of plaintiff's eligibility was not arbitrary or capricious, was supported by substantial evidence, and was consistent with the law.

Plaintiff responded by submitting a cross-motion for summary judgment. Plaintiff argues that regardless of the Secretary of the Air Force's discretionary authority, the court has jurisdiction over Mr. Shrader's claim as a due process challenge to the AFBCMR's denial of his liberty and property interests. Plaintiff also asserts that he is entitled to VSI/SSB benefits because the Air Force's "discretionary denial" of Mr. Shrader's eligibility is inconsistent with the Congressional intent of the applicable statutes. Finally, plaintiff maintains that the court may review the denial of his eligibility because the act "created enforceable substantive rights," and the denial of the benefits was arbitrary and capricious.

## FACTS

According to plaintiff's complaint, in December of 1991, Mr. Shrader was briefed by Air Force Military Personnel Center staff who alerted him that as a result of a drawdown in forces, there would be increasingly limited flying opportunities for majors and lieutenant colonels at the 37th Fighter Wing,

Tonopah Test Range in Nevada. In addition, plaintiff learned that command positions within available flying posts "would most likely be limited" to those officers twice selected "below-the-zone." At that time, Mr. Shrader, who had been in military service since June 1977, had no "below-the-zone" promotions. According to the plaintiff, therefore, he had to confront the prospect of "losing all his aviator skills and certain lack of opportunity in a career he had spent 15 years developing."

On January 24, 1992, the Secretary of the Air Force announced to all Air Force personnel the availability, purpose, and requirements of the VSI/SSB programs, as follows:

1. THE PURPOSE OF THIS MESSAGE IS TO ANNOUNCE THE AIR FORCE VSI/SSB PROGRAMS. . . .

2. BY 31 DEC 92. WE NEED OVER 21,000 ENLISTED AND 4.800 OFFICER LOSSES ABOVE AND BEYOND THOSE WE WOULD EXPECT TO GET THROUGH ONGOING LOSS PROGRAMS. BECAUSE OF THEIR CONCERN OVER THE EFFECT OF STRENGTH REDUCTIONS ON THE MEN AND WOMEN IN UNIFORM, CONGRESS AUTHORIZED VSI/SSB. THEY WANTED TO GIVE A REASONABLE, FAIR CHOICE TO PERSONNEL WHO OTHERWISE WOULD HAVE NO OPTION OTHER THAN TO FACE SELECTION FOR INVOLUNTARY SEPARATION. WE ARE INTEGRATING OUR VSI/SSB OFFER INTO OUR BALANCED APPROACH TO THE DRAWDOWN.

\* \* \*

3. BASIC ELIGIBILITY CRITERIA:

A. THE FOLLOWING CRITERIA ESTABLISHED BY LAW. MUST BE MET BY EACH MEMBER WITHIN THE ELIGIBLE POPULATIONS. . . .

(2) ALL FIELD GRADE LINE OFFICERS (MAJOR—LIEUTENANT COLONEL), INCLUDING MAJOR SELECTS, EXCEPT OFFICERS WHO WERE SELECTED/PROMOTED BELOW–THE–PROMOTION–ZONE (BPZ) AND NOT

SUBSEQUENTLY DEFERRED FOR PROMOTION TO A HIGHER GRADE.

\* \* \*

D. EXCLUDED FROM CONSIDERATION:

(1) MEMBERS WHO HAVE APPLIED FOR OR RECEIVED AN APPROVED VOLUNTARY DATE OF SEPARATION IN FY92/93 (29 SEP 93 OR EARLIER). IF PENDING APPLICATION IS DISAPPROVED, MEMBER BECOMES ELIGIBLE. REQUESTS FOR WITHDRAWAL OF PENDING APPLICATIONS OR APPROVED VOLUNTARY SEPARATIONS TO ALLOW MEMBERS TO BE ELIGIBLE FOR THESE PROGRAMS WILL NOT BE APPROVED. IT IS NOT THE INTENT OF VSI/SSB TO COMPENSATE THOSE WHO HAVE PREVIOUSLY SIGNALED THEIR INTENT TO SEPARATE.

HQ USAF/DP Message, 240830Z JAN 92, SUBJECT: "FY 92–93 Voluntary Separation Incentive (VSI)/Special Separation Benefit (SSB) Programs."

Plaintiff alleges that on February 4, 1992, Air Force separations personnel from Nellis Air Force Base "indicated" to Mr. Shrader that he was eligible for the VSI/SSB programs. Accordingly, he decided to apply. Mr. Shrader further alleges he was also informed by the Air Force that selection for "below-the-zone" promotion did not impact a VSI/SSB application. Moreover, plaintiff emphasizes that he acquired this information because he "specifically asked if [he] would be eligible even if [he] were selected for Lt. Col. from Below the Zone."

Prior to February 17, 1992, plaintiff was selected for a promotion "below-the-zone" to lieutenant colonel.[1] Following this selection,

on February 18, 1992, plaintiff submitted his application for the VSI program stating that "[s]hould I not be accepted for this program, I still want to separate on my request." The application was returned on March 3, 1992, following notice to plaintiff that his selection for "below-the-zone" promotion made him ineligible for the VSI program. Notwithstanding his inability to qualify for the VSI program, Mr. Shrader elected to voluntarily separate from the Air Force. He was granted an honorable discharge, effective on September 1, 1992.

On April 5, 1993, plaintiff appealed to the AFBCMR to review "the injustice of policy" and "discriminatory practices." On July 30, 1993, the AFBCMR forwarded an advisory opinion to plaintiff which stated:

4. Discussion: The program as announced in HQ USAF/DP 240830Z Jan 1992 stated in paragraph [sic] 3B(2): 'All field grade line officers (major-lieutenant colonel), including major selects, except officers who were selected/promoted below-the promotion-zone (BPZ) and not subsequently deferred for promotion to a higher grade.' The VSI and SSB were authorized by the Congress to help the Department of Air Force twofold: (1) honor its commitment to its members, and (2) avoid serious skill and grade imbalances which would degrade readiness of the future force. The goal, therefore, was to reduce the force proportionally, ensuring that numbers of members in all skill, pay-grade and years-of-service groups did not exceed future requirements. At the same time, the Department must ensure that most qualified members in the skills and year groups needed are retained and permitted to continue to retirement.

---

1. There is no indication in the pleadings filed with the court as to the exact date that the plaintiff was selected for a "below-the-zone" promotion or the date that he rejected this promotion offer. The only firm date discernable from the record is that Mr. Shrader's name was on "the most recent 0–5, BPZ list" prior to February 17, 1992, as evidenced in a letter, dated February 17, 1992, and sent to the plaintiff from a colleague in the Office of the Chief of Staff at the Supreme Headquarters Allied Powers Europe. However, what is clear is that Mr. Shrad-

er knew prior to the date he submitted his VSI application on February 18, 1992, that he had been selected for a "below-the-zone" promotion. This conclusion is supported further by statements attributed to Mr. Shrader that appeared in a January 1993 *Chicago Tribune* newspaper article, which the plaintiff provided to the AFBCMR and also is included in the administrative record before this court, in which Mr. Shrader is quoted as saying he submitted his VSI application a week after his selection for promotion.

5. Conclusion and recommendation: We do not believe the applicant has provided proof of an error or injustice. The law allows the secretaries of the departments to prescribe requirements relating to years of service, skill or rating, grade, or rank, and remaining period of obligated service. The Secretary [sic] of the Air Force elected not to offer the program to below-the-zone promotees. Recommend the request be denied.

The AFBCMR gave the plaintiff thirty (30) days "to respond and/or submit additional matters in support of your request." On August 23, 1993, plaintiff responded to the AFBCMR advisory opinion in a four-page letter which reiterated the facts and interpretation of law he had presented in his initial application. In his submission the plaintiff tried to explain that "[t]he implication ... was that I simply wanted to resign, VSI or not. The above discussion, backed up with my original AFBCMR documentation, proves that I did not; but had to make a decision due to career situations which the VSI was designed to meet." On December 1, 1993, the AFBCMR issued its final opinion which concluded that:

after careful consideration of applicant's request and the available evidence of record, we find insufficient evidence of error or injustice to warrant corrective action. The facts and opinions stated in the advisory opinion appear to be based on the evidence of record and have not been adequately rebutted by applicant. Absent persuasive evidence applicant was denied rights to which entitled, appropriate regulations were not followed, or appropriate standards were not applied, we find no basis to disturb the existing record. Accordingly, applicant's request is denied.

On October 1, 1994, plaintiff filed a complaint in this court seeking a reversal of the AFBCMR's denial of his eligibility for the VSI program.

## DISCUSSION

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), has been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir. 1989); *see also Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by plaintiff are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Alaska v. United States,* 32 Fed.Cl. at 695; *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I* ); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II* ) (citing *United States v. Testan,*

424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court, pursuant to 28 U.S.C. § 1491, in *Eastport Steamship Corp. v. United States,* as follows:

Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.

*Id.* at 605, 372 F.2d 1002 (citations omitted).

In the case at bar, defendant argues that this court does not have jurisdiction over plaintiff's claim because the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1994), which plaintiff invokes as the jurisdictional basis for this claim, is not a money-mandating statute. Defendant argues that this court lacks jurisdiction to consider the merits of this case because the VSI/SSB statutes do not mandate the payment of money. Defendant also contends that plaintiff fails to state a claim upon which relief can be granted in this court because the Secretary of the Air Force is vested with broad discretion to determine the eligibility criteria for Air Force programs and to approve or deny separation requests.

■ The APA establishes a right to judicial review of agency actions, except to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1994). Plaintiff urges this court to review the decision by the Secretary of the Air Force to deny the plaintiff VSI/SSB benefits. Both programs, however, are pro-

mulgated under statutes which vest broad discretion in the agency and the service secretary. Congress enacted the VSI/SSB programs on December 5, 1991 in two sections of Title 10 of the United States Code, that specifically empowered the secretary of each branch of the military to approve or disapprove applications, for separation benefits or incentives, by members of the armed forces seeking to retire from active duty. 10 U.S.C. §§ 1174a, 1175 (1994).[2]

Plaintiff argues that the implementation of the VSI/SSB programs by the Air Force is contrary to the legislative intent and the purposes of the VSI/SSB statutes. When, however, a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1280–81, 6 L.Ed.2d 575 (1961), *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). Moreover, when reviewing an agency's construction of a statute it administers, courts should show great deference to the interpretation of the statute given by that agency. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694, *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984); *Katsis v. Immigration & Naturalization Service*, 997 F.2d 1067, 1069 (3rd Cir.1993), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *see also Wassenaar v. Office of Personnel Management*, 21 F.3d 1090, 1092 (Fed.Cir.1994). "[T]he courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program." *Katsis v. Immigration & Naturalization Service*, 997 F.2d at 1070 (citations omitted).

In the SSB program, "[t]he Secretary concerned shall carry out a special separation benefits program under this section. An eligible member of the armed forces may request separation under the program." 10 U.S.C. § 1174a(a). Eligibility for voluntary separation under the program is available if the individual "meets such other requirements as the Secretary may prescribe, which may include requirements relating to—(A) years of service; (B) skill or rating; (C) grade or rank; and (D) remaining period of obligated service." 10 U.S.C. § 1174a(c)(5). The statute authorizing the VSI program states that "[t]he Secretary of Defense and the Secretary of Transportation may provide the incentive to a member of the armed forces if the member ... meets such other requirements as the Secretary may prescribe from time to time, which may include requirements relating to—(A) years of service; (B) skill or rating; (C) grade or rank; and (D) remaining period of obligated service." 10 U.S.C. § 1175(b).

Furthermore, even after eligibility is established, the SSB statute states that members must request separation benefits and such requests "shall be subject to the approval of the Secretary." 10 U.S.C. § 1174a(a). The statutory provision creating the SSB program also provides that "the Secretary concerned may limit the applicability of a program under this section to any category of personnel defined by the Secretary in order to meet a need of the armed force under the Secretary's jurisdiction to reduce the number of members in certain grades, the number of members who have completed a certain number of years of active service, or the number of members who possess certain military skills or are serving in designated competitive categories." 10 U.S.C. § 1174a(e)(1). Similarly, in an explicit grant of broad discretionary authority, the VSI provision states that the "Secretary, in

---

**2.** The SSB program is contained in 10 U.S.C. § 1174a and provides that an approved service member may receive a one-time separation payment and some non-monetary benefits and services. 10 U.S.C. § 1174a(b). The VSI program is contained in 10 U.S.C. § 1175 and provides that an approved service member may receive an annual payment for twice the number of years the member served on active duty. 10 U.S.C. § 1175(e). A service member is given the opportunity to apply for either program, but separation can only occur under one of the programs. 10 U.S.C. §§ 1174a(e)(3), 1175(c). Title 10 also includes a generally applicable section on "Rules of Construction," which states: "[i]n this title— (1) 'shall' is used in an imperative sense; (2) 'may' is used in a permissive sense." 10 U.S.C. 101(e) (1994).

his discretion, may approve or disapprove a request according to the needs of the armed forces." 10 U.S.C. § 1175(d)(2). From the words of the statute, there can be little doubt that Congress intended to invest the appropriate service secretary with broad discretion to administer the VSI/SSB programs. *See also* 10 U.S.C. § 1201 (1994); *Rice v. United States,* 31 Fed.Cl. 156, 166 (1994), *aff'd,* 48 F.3d 1236 (Fed.Cir.1995).

 Moreover, "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (citing *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971)). As this court has stated before, "it would be hard to measure the damaging effect of shifting this type of sensitive personnel and management decision from trained military professionals, to a non-specialist judiciary...." *Taylor v. United States,* 33 Fed.Cl. 54, 58 (1995). In fact, there is clear precedent which states that "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995) (citing *Orloff v. Willoughby,* 345 U.S. at 94, 73 S.Ct. at 540; *Murphy v. United States,* 993 F.2d 871, 874 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994); *Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979); *Doggett v. United States,* 207 Ct.Cl. 478, 482 (1975)). The United States Supreme Court has noted:

[J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate

Army matters as the Army must be scrupulous not to intervene in judicial matters. *Orloff v. Willoughby,* 345 U.S. at 93–94, 73 S.Ct. at 540.

 The clear, statutory grant of broad discretion to administer the VSI/SSB programs substantiates defendant's contention that the relevant VSI/SSB statutes are not money mandating under 28 U.S.C. § 1491. Plaintiff, however, also maintains that "[r]egardless whether the VSI/SSB statute grants discretionary authority to the Secretary, this court can consider the claim if it affects Constitutional interests and rights." In that regard, plaintiff argues "that his liberty interest is impacted because the Air Force's VSI/SSB policy seeks to force career suicide with the likelihood of future involuntary separation that together will irreparably damage his career opportunities and financial security." Similarly, in response to a specific question from the court, plaintiff's counsel responded that Mr. Shrader's "constitutional interest" was "[t]hat by remaining in the service, being forced to remain in the service, he [plaintiff Shrader] eventually would be forced out and would be unable to continue in his chosen career field." Plaintiff argues his constitutional claim pursuant to the Fifth Amendment to the Constitution under both the due process and the takings clauses. The case law, however, is clear that "[a]lthough the Fifth Amendment's due process clause provides that no person shall be deprived of property without due process of law, no language in the clause itself requires the payment of money damages for its violation." *Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987) (citing *Inupiat Community of the Arctic Slope v. United States,* 230 Ct.Cl. 647, 662, 680 F.2d 122, 132, *cert. denied,* 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982)); *see also Earnest v. United States,* 33 Fed.Cl. 341, 344 (1984).

 Moreover, regarding a possible takings claim by Mr. Shrader, plaintiff's interest in remaining an active pilot, his risk of being forced out of the service, or for that matter his failure to qualify for eligibility in the VSI/SSB programs, were neither vested rights, nor were they more than a "mere expectancy, and therefore not entitled to pro-

tection as a property right." *See Alberico v. United States,* 783 F.2d 1024, 1027 (Fed.Cir. 1986). It bears repeating that "[u]nder Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491, although some separate general principle—arising, for example, from tort law—might lead to a remedy in another forum or under some special relief provision." *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 605–07, 372 F.2d at 1007–08.

In order for the plaintiff to assert a violation of a statutory or constitutional right to VSI/SSB benefits or the opportunities such a voluntary separation program may offer, Mr. Shrader must establish an entitlement. As the United States Supreme Court has stated: "the asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d 1002). Also, there is clear precedent which equates such a money mandating statute with a lack of discretionary authority in the agency charged with its implementation. *Wyatt v. United States,* 2 F.3d 398, 401 (Fed.Cir.1993). *See, e.g., Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991) ("Secretary has no discretion whether or not to pay active duty service members, they are statutorily entitled to the pay of their positions until the entitlement is lawfully terminated."); *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

Programs such as the VSI/SSB statutes cannot be classified as money mandating, especially when a plaintiff, such as the one before the court, must seek access to or obtain eligibility status for participation in the program. As is clear from the statutes at issue, the discretionary authority given the Secretary of the Air Force to establish eligi-bility criteria indicates that the Air Force is not under any mandate to declare any individual, including this plaintiff, eligible, regardless of his qualifications. In this case, in which plaintiff was ineligible to participate in the VSI/SSB programs as a result of published criteria applicable to all Air Force personnel, the court favors adherence to the well established, analogous rule that "one is not entitled to the benefit of a position until he has been duly appointed to it." *United States v. Testan,* 424 U.S. at 402, 96 S.Ct. at 955 (citations omitted). The court cannot find that this plaintiff is entitled to rights associated with a program to which he has not been appointed or made eligible when the right of appointment specifically has been given to the broad discretion of the service secretary by the statute. "Whatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions." *Orloff v. Willoughby,* 345 U.S. at 90, 73 S.Ct. at 538.

The discretionary authority of the Secretary of the Air Force to "approve or disapprove a request according to the needs of the armed forces" refutes plaintiff's claims to entitlement under the statute. 10 U.S.C. § 1175(d)(2). In 1989, the United States Court of Appeals for the Federal Circuit, commenting on the reverse of the situation at bar, wrote:

> [O]ur analysis whether the Claims Court had jurisdiction turns on whether the Secretary of Agriculture was granted discretion to refuse participation by any applicant who was qualified for the program. We conclude the Secretary was not. Therefore, this is a money mandating statute that triggers Tucker Act jurisdiction in the Claims Court.

*Grav v. United States,* 886 F.2d 1305, 1307 (Fed.Cir.1989). As established above, the Secretary of the Air Force is given broad discretion, both in establishing eligibility criteria for the VSI/SSB program and in granting separation requests to eligible members. Plaintiff in the instant case not only did not have a right or entitlement to VSI/SSB eligibility or benefits, given the broad discretion

afforded to the Secretary of the Air Force to implement the VSI/SSB programs and to grant separation requests in the best interests of the military, but the above-captioned plaintiff was not even eligible for the VSI/SSB programs as it was established for implementation throughout the Air Force.

The applicable precedent also is clear that the United States Court of Federal Claims only has jurisdiction to decide plaintiff's claim if the claimant's resignation from active military service was involuntary. *Adkins v. United States,* 68 F.3d at 1321. Obviously the converse is true; accordingly, therefore, if Mr. Shrader's separation or "retirement was 'voluntary,' he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim." *Id.*

 Resignations from the military are presumed to be voluntary, although a claimant may rebut this presumption. *Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584, 587 (1975). Stated otherwise, plaintiff bears the burden of establishing that his resignation was involuntary. *Id.* The court, in determining whether the separation qualifies as voluntary, is required to examine all of the surrounding facts and circumstances. *Covington v. Department of Health and Human Services,* 750 F.2d 937, 941–42 (Fed.Cir.1984). The purpose of the court's analysis is to determine whether the employee exercised free choice when deciding to leave the armed services. *Bergman v. United States,* 28 Fed.Cl. 580, 585 (1993).

While a resignation is presumed to have been voluntary the United States Court of Appeals for the Federal Circuit articulated the standard:

> To determine whether a resignation or retirement is voluntary, a court must examine 'the surrounding circumstances to test the ability of the employee to exercise free choice.' *Perlman v. United States,* 490 F.2d 928, 933, 203 Ct.Cl. 397 (Ct.Cl.1974). With freedom of choice as the guiding principle, it has been held that the element

of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, *see. e.g., McGucken v. United States,* 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, *see Cunningham v. United States,* 423 F.2d 1379, 1384–85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, *see Perlman,* 490 F.2d at 932–33; or (4) an employee fails to understand the situation due to mental incompetency, *see Manzi v. United States,* 198 Ct.Cl. 489, 492 (1972).

*Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983).

 On September 1, 1992, following his denial for VSI/SSB benefits, plaintiff voluntarily separated from the military. There is no dispute in the record that plaintiff's separation from the Air Force was voluntary. Instead, plaintiff offers only repeated assertions of his difficult choices and his self-perceived need to resign because of the possibility of losing his flying status in the face of limited opportunities in the military for pilots.[3] The case law is clear that the presumption of voluntary separation endures even if the plaintiff is confronted with "a choice of unpleasant alternatives." *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985).

Nor can plaintiff claim that he was misinformed or coerced into separating from the Air Force to counter the presumption that his resignation was voluntary. When he applied for the VSI program, plaintiff specifically stated: "[s]hould I not be accepted for this program, I still want to separate on my request." Plaintiff was provided with full notice of his lack of eligibility for the VSI or the SSB programs over six months prior to the date of his separation on September 1, 1992, and his decision to apply for voluntary separation was processed by him subsequent to the denial of such benefits.

---

**3.** Plaintiff has stated, "[h]aving been briefed by Military Personnel that my FLYING career was over, the chances of remaining employable diminish rapidly from behind a desk. This amounted to a death warrant for future employment potential, either at the twenty year point or should I find myself forced out at another time." (Emphasis in original.)

Although in his brief supporting his cross motion for summary judgment, plaintiff cites to *Bergman v. United States* regarding the military's affirmative duty to provide counseling to officers applying for the VSI/SSB program, he did not note the opinion's more pertinent finding. The court in *Bergman* stated that "no one in the Air Force forced plaintiff to resign; the option of remaining in the military always remained a viable option for plaintiff." *Bergman v. United States*, 28 Fed.Cl. at 587. Moreover, in *Bergman*, the court noted that even "the probability of removal does not convert a voluntary resignation into an involuntary one." *Id.* (citing *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985)).

This court does not agree that the probability of losing flying status, especially when coupled with a "below-the-zone" promotion, left the plaintiff with no alternatives but to leave the military, thus making his separation involuntary. Despite any difficult choices Mr. Shrader may have had to make when deciding to separate, the decision was his to make, and this court finds that it was a voluntary one. In fact, at the time plaintiff was denied eligibility for VSI/SSB benefits, plaintiff still retained the possibility of a career in the military in the elevated rank of lieutenant colonel, or perhaps higher.

Mr. Shrader repeatedly attempts to insinuate that the VSI/SSB programs were oriented to service personnel, like himself, with career decisions at hand. In fact, the programs were for military personnel who were being encouraged to leave the military and, thus, were without the option of furthering their careers in the military. In contrast, Mr. Shrader was laden with choices that many service personnel coveted, albeit not the ones plaintiff seems to have wanted. The Air Force selected Mr. Shrader ahead of the normal time, unlike thousands of other military personnel, for a promotion, presumably because the Air Force wanted to encourage and further plaintiff's career in the military. Mr. Shrader had options, unlike many other military personnel who were being vigorously encouraged to leave the military during a drawdown. Mr. Shrader elected to resign on September 1, 1992, after rejecting his "below-the-zone" promotion, and after being informed on March 3, 1992 that he was ineligible for the VSI/SSB programs.[4]

## CONCLUSION

Plaintiff has failed to properly invoke the jurisdiction of this court, or to state a claim on which this court can grant relief. Mr. Shrader voluntarily separated from the Air Force after he was denied access to the VSI/SSB programs, which were implemented in accord with the broad discretionary authority granted to the Secretary of the Air Force under 10 U.S.C. §§ 1174a, 1175. Defendant's motion to dismiss is, hereby, **GRANTED**, and plaintiff's motion for summary judgment is, therefore, **DENIED**.

**IT IS SO ORDERED.**

---

4. If Mr. Shrader had elected to remain with the Air Force after being selected "below-the-zone" to become a Lieutenant Colonel, and retired after twenty years of service, which would have been at about the time of the release of this opinion, in all probability, Mr. Shrader would have received an annual pension for the remainder of his life greater than the one offered to those declared eligible for the VSI program.