**Ronald F. GREEK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–425C.

United States Court of Federal Claims.

May 27, 1999.

Michael J. Calabro, Flanagan & Hunter, P.C., Boston, Massachusetts, for Plaintiff.

William F. Ryan, Department of Justice, Washington, D.C., for Defendant.

## OPINION

BASKIR, Judge.

### SUMMARY

Plaintiff, a former Lieutenant in the U.S. Coast Guard with more than 15 years of active duty service, claims he should have been retired, and not merely separated, pursuant to a statute that authorizes the Secretary of Transportation to retire officers with at least 15 years of service. The Government has moved to dismiss on the grounds the statute is permissive, not mandatory, and thus not a "money-mandating statute" essential for this Court's jurisdiction. It also contends the claim is non-justiciable and that the earlier decision of the Coast Guard Board of Correction for Military Records (Board) rejecting the claim must be affirmed. We grant the Government's motion for the reasons set forth in this opinion.

### BACKGROUND

In the years following the collapse of the Soviet Union and the fall of the Iron Curtain, our military leaders have been challenged to revise 50 years worth of Cold War military planning. Instead of a massive conventional war between NATO and the Warsaw Pact across the plains of northern Germany, the Nation now must meet more complex military requirements. With declining military budgets and a reduced need for manpower, the armed services are undergoing an extraordinary downsizing. From a 1991 Gulf War level of 750,000 troops making up 16 active combat divisions, the Army, for example, now numbers less than 480,000 and 10 divisions. While reducing force levels, the services must ensure readiness, strike the proper balance among the various ranks, preserve critical skills, retain specialities, meet recruitment goals, and maintain morale. All this is a daunting task for military leadership. In addition, the services "must be careful not to dismantle elements of the current structure that are still applicable to near-term challenges." See NATIONAL DEFENSE PANEL, TRANSFORMING DEFENSE—NATIONAL SECURITY IN THE 21ST CENTURY 87 (1997).

Congress has enacted a number of personnel programs to aid the services in this task, among them the Voluntary Separation Incentive/Selective Separation Bonus programs considered by this Court in *Shrader v. United States*, 38 Fed.Cl. 788 (1997), and the Temporary Early Retirement Authority (TERA), Pub.L. No. 102–484, § 4403, 106 Stat. 2702 (October 23, 1992)(set out as a statutory note to 10 U.S.C. § 1293), the subject of the instant litigation. The TERA was first adopted as an additional force management tool for the three military departments. Administrative Record (AR I) at 55. The authorizing language is the same for each of the services and we quote as an example the language pertaining to the Navy:

> During the active force draw down period, the Secretary of the Navy may—
>
> (a) apply the provisions of section 6323 of title 10 United States Code, to an officer with at least 15 but less than 20 years of service by substituting 'at least 15 years' for 'at least 20 years' in subsection (a) of that section...

§ 4403(b)(2). The words are quite direct. TERA authorizes the service Secretaries, under overall guidance from the Secretary of Defense, to offer retirement to officers and enlisted members with less than 20 years, but at least 15 years service. It is up to the respective Secretaries to determine whether this early retirement program is necessary in order to meet desired force levels. If the program is adopted, they may tailor eligibility to the specific manpower needs of the service, including rank, years of service, specialties, and overall force level. The statute is clearly discretionary with the Secretary of the Navy, as with his counterparts in the Air Force and Army. The Plaintiff does not dispute this.

The issue in this case arises because of the language Congress chose when it applied the program to the Coast Guard two years after TERA was originally enacted. Instead of repeating the entire text of TERA, Congress chose to adopt its terms by reference, providing that TERA:

shall apply to the Coast Guard in the same manner and to the same extent as that provision applies to the Department of Defense. The Secretary of Transportation *shall* implement the provisions of that section with respect to the Coast Guard and apply the applicable provisions of title 14, United States Code, relating to retirement of Coast Guard Personnel.

Pub.L. 103–337, § 542(d), 108 Stat. 2769 (October 5, 1994)(set out as a statutory note to 10 U.S.C. § 1293) (emphasis added).

Then–Lieutenant Greek was non-selected for promotion to Lieutenant Commander for the second time in his career on October 17, 1994. Pursuant to Coast Guard policy, he was required to be involuntarily separated at that time. Because retirement normally requires 20-years service, he was not eligible for retirement and its attendant pay and other benefits. Lieutenant Greek received the notice of his impending separation on October 24, 1994, a bare three weeks after the Coast Guard TERA was enacted (October 1, 1994). He immediately claimed the benefits of the statute, asserting that it was mandatory in nature and, therefore, required the Coast Guard to retire him with only 15 years of active duty service under 14 U.S.C. section 283. This statute provides for retirement of lieutenants who fail to be promoted to Lieutenant Commander a second time if they are eligible for retirement "under any law." *See* 14 U.S.C. § 283(a)(3).

The Coast Guard, however, did not immediately adopt a TERA program. Lieutenant Greek's separation was originally set for the end of June 1995. On his request, he was separated two months earlier, on April 30, 1995. On January 6, 1996, while Plaintiff's petition was pending before the Board, and eight months after he had been discharged, the Coast Guard launched the "fifteen-year retirement" program. ALCOAST 007/96 (January 16, 1996)(AR I at 3–4).

Lieutenant Greek sought to have his records corrected to show he had been retired. The Board declined to do so, holding that TERA was discretionary and that the Secretary of Transportation was not obligated to implement it. Lieutenant Greek could not avail himself of the TERA provisions because the Coast Guard had implemented the program after he had been separated and it was not retroactive. Final Decision, BCMR No. 76–95 at 4–5 (AR I at 12–13). Lieutenant Greek then filed this suit. The Government countered by moving to dismiss under Rule 12(b)(1) and (4) on the grounds that the Court lacked jurisdiction, that the issue was non-justiciable, and that the decision of the Board should be affirmed in any case, as it was not arbitrary, capricious, an abuse of discretion or contrary to law or unsupported by substantial evidence.

Each ground asserted by the Government turns on whether the Coast Guard TERA is mandatory or permissive. The Government argues that the statute is discretionary, notwithstanding the apparent mandatory sense of the word "shall," and that there is ample precedent that discretionary statutes do not satisfy the test for the U.S. Court of Federal Claims jurisdiction. The Court agrees.

## DISCUSSION

### Jurisdiction

The Court's jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (1992), extends to:

> any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Supreme Court has recognized that the Tucker Act does not itself create any substantive rights enforceable against the United States, but merely confers jurisdiction upon this Court when the substantive right to money damages exists independently. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, the Court must determine whether the statute upon which Lieutenant Greek relies "can fairly be interpreted as mandating compensation by the Federal Government". *Id.* at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)).

■ A discretionary payment of money does not give rise to a claim for monetary damages against the United States. *Holder v. Department of the Army*, 229 Ct.Cl. 417, 670 F.2d 1007, 1011 (1982). Lieutenant Greek asserts that the Court has jurisdiction to review his complaint because "there is a claim that money is presently due and owing." Plaintiff's Opposition to Defendant's Motion to Dismiss or for Judgment on the Administrative Record (Plaintiff's Opposition) at 6. While he is right as to the test for jurisdiction, he is wrong as to whether this statute meets the test. His argument rests entirely upon his interpretation that the provisions of TERA confer to him an "entitlement to monetary payments and retirement status." *Id.* at 7. Because the Court finds, *infra*, that the TERA provisions were discretionary, there is no such "entitlement" or "money mandating" trigger for Tucker Act jurisdiction with the Court. *Adair v. United States*, 227 Ct.Cl. 345, 648 F.2d 1318, 1322 (1981).

*Statutory Construction*

The path to finding that TERA is permissive is, unfortunately, not as direct as it might be. Some ambiguity is created by the statute's use of the word "shall." This Court is alert to the admonition that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." *Philbrook v. Glodgett*, 421 U.S. 707, 714, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975)(quoting *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892)).

Plaintiff's argument rests wholly on his interpretation of the statute's clause:

[t]he Secretary of Transportation *shall* implement the provisions of [TERA] with respect to the Coast Guard and apply the applicable provisions of Title 14, United States Code, relating to retirement of Coast Guard personnel.

§ 542(d) (emphasis added).

He argues that the word "shall" is compulsory; that the Secretary has no choice but to implement TERA for the Coast Guard. The Government counters that the phrase is sim-

ply meant to identify the official charged with the authority to implement TERA for the Coast Guard. While in isolation both interpretations are plausible, the purpose of the provisions and the context of the terms remove all doubt in favor of the Government's interpretation.

As an initial matter, this phrase must be read together with the preceding sentence, which clearly establishes Congress' direction as to the application of TERA to the Coast Guard. That clause provides that TERA "shall apply to the Coast Guard *in the same manner and to the same extent* as that provision applies to the Department of Defense." *Id.* (emphasis added). Those TERA provisions referred to, as we have seen already, are clearly discretionary as to the three service Secretaries: "The Secretary of the Navy *may* . . . [implement an early retirement program]." § 4403(b)(2) (emphasis added.)

■ Congress expressly tied the scope of the Coast Guard provision to the corresponding statutory early retirement authority offered to the military departments. The latter was clearly not mandatory; the Secretaries of the respective services were authorized to employ their discretion in implementing the program. *See* § 4403(b)(1)–(3) and (d). Under norms of statutory construction, the link between the Coast Guard authority and the earlier statutes compels the conclusion that section 542(d), applying the military departments' early options to the Coast Guard, was just as permissive. As Plaintiff observes (Plaintiff's Opposition at 6), statutes *in pari materia*, or having a common purpose, are to be construed together. BLACK'S LAW DICTIONARY. 711 (5th ed.1979). This is particularly true if the statutory sections refer to or embrace one another, as is the case with the TERA provisions. *United Hospital Center, Inc. v. Richardson*, 757 F.2d 1445, 1451 (4th Cir.1985)(citing *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 631–32, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973)).

■ Remedial statutory schemes such as TERA are liberally construed in order to effect their primary purpose. 3 NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUC-

TION § 57.12 at 33 (5th ed.1992). The concept of a compulsory Congressional directive cannot be reconciled with a "force management tool," which is intrinsically discretionary. The Court is not constrained to adopt a construction plainly at variance with the policy of the legislative scheme and the stated purpose of the legislation. *Trustees of Indiana University v. United States,* 223 Ct.Cl. 88, 618 F.2d 736, 739 (1980); *United States v. Native Village of Unalakleet,* 188 Ct.Cl. 1, 411 F.2d 1255 (1969). Only by interpreting the TERA provisions as permissive can this Court give effect to the legislative will. *Philbrook,* 421 U.S. at 713, 95 S.Ct. 1893.

It is not clear how the Plaintiff reconciles the admittedly discretionary language of the military departments' authority and the reference in the first sentence of the Coast Guard authority, with his position that the Coast Guard authority is mandatory. He asserts only that Congress changed its mind and imposed on the Coast Guard what is left optional with the other services. Again, his only authority for this position is a literal reading of the second sentence of the Coast Guard provision.

Besides being unsupported by any independent evidence, this view also tortures language and meaning. And meaning is further tortured by contemplating what issues follow if the statute is considered to be mandatory. The interpretation leads us into a thicket where the guideposts are non-existent. If the phrase does not identify "who" is to implement TERA, but rather "whether" it must be implemented, how do we answer the "when, who and how" questions? If the Secretary of Transportation must implement it, "when" is he to do so, on the day of enactment? The Plaintiff answers that the Secretary was obligated to implement the statute immediately on October 1, or very quickly thereafter. Even so, what would be the remedy for his failure to do so? As it turned out, he waited 18 months. Is there a judicial remedy for his tardiness, or is he subject instead to Executive or Congressional discipline for his nonfeasance? Does Lieutenant Greek accrue some rights and become the beneficiary of this unwarranted delay? If

Lieutenant Greek can compel this Court to remedy the Secretary's violation of a direction to implement TERA immediately, "how" does the Court do that? Does the Court implement the ALCOAST 007/96 directive as of the date of enactment, retroactively to October 1, 1994? Why adopt these provisions? What if the Secretary had not implemented TERA at all? Would this Court write its own program for the Coast Guard? The Plaintiff says "yes" and urges the Court to declare that all Coast Guard personnel with more than 15-years active duty service as of October 1, 1994, were eligible to retire, and that the Coast Guard is obligated to grant all such retirement requests.

The Court is reluctant to empty the entire Coast Guard of all its experienced personnel on the strength of just one word. The wisdom of the enumerable precedents that exclude the Courts from military personnel policy decisions is confirmed by the consequences that flow from the strained logic of Plaintiff's position. *See generally, Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

Plaintiff offers no satisfactory answers to these questions and, of course, there are no good answers. The issues raised by the Plaintiff's interpretation show how implausible it is. They also serve to underline the need to keep complex military personnel policies out of the Courts and leave them to the discretion of the officials designated by Congress to administer those organizations.

The drafting approach taken by Congress in extending TERA to the Coast Guard necessitated a phrase identifying the official charged with implementing the program. Rather than repeat the exact words of the substantive TERA provisions afresh, Congress incorporated the Service provisions by reference. Without a provision designating the Secretary of Transportation, it would be unclear whether the Secretary of Defense or the Secretary of the Army, Navy or Air Force was to implement the Coast Guard provision. Thus, we read the Coast Guard statute as follows:

"The Secretary of Transportation, and not the Secretary of Defense, or the Secretaries of the Air Force, Army or Navy, is authorized to implement the TERA for the Coast Guard."

This conclusion is given further weight by the fact that the TERA was later extended to the National Oceanic and Atmospheric Administration, and the Secretary of Commerce was designated the implementing official for that program by the same phraseology. *See* Pub.L. 104–106, § 566(c), 110 Stat. 328 (February 10, 1996) (set out as a statutory note to 10 U.S.C. § 1293).

The military is being reorganized to meet the new demands for the use of armed forces in the 21st Century, and this transformation cannot be effectuated by a "meat-ax" approach to personnel. Painstaking efforts must be made to preserve an appropriate balance of officers with varying degrees of experience and military specialty. AR I at 11; § 4403(d) (according discretion to set criteria based on factors such as grade, years of service and skill). The stated purpose of TERA, as it applied originally to all military services and subsequently to the Coast Guard, "is to provide the Secretary of Defense [Secretary of Transportation] a temporary additional force management tool with which to effect the draw down of military forces [Coast Guard] through fiscal year 1999." § 4403(a).

The administrative record contains policy guidance on the early retirement programs for the military services, demonstrating the very limited manner in which the Secretaries of those services have applied the authority. AR I at 51–62. Although the data is by no means extensive, even a cursory review of that material shows that eligibility for early retirement varies among the military services and reflects the needs of each particular service. Congress anticipated this might be the case and provided the Secretaries of each military department with the discretion to prescribe criteria. § 4403(d). In any case, it is certainly apparent that even upon adopting TERA, the Coast Guard's eligibility under the program is dictated by service need. *See* ALCOAST 007/96 (January 16, 1996) at para. (A)(3) ("Service need will determine whether individual applications for early retirement are accepted.")

## *Justiciability*

Having found that the statute is discretionary, and thus that the U.S. Court of Federal Claims does not have jurisdiction, it is not necessary to rule explicitly upon the justiciability of Plaintiff's claims. But it is foolish to ignore the obvious. The wide latitude of discretion accorded officials to fulfill TERA's statutory purpose renders this case "beyond the ken of judicial competence." *Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir.1990)(citing *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The statutory context is an especially compelling deterrent to judicial review since eligibility for early retirement is highly dependant on service need. *See Shrader,* 38 Fed. Cl. at 793 (recognizing strong policy compelling Court to allow latitude to the armed forces in administering voluntary separation incentive programs.) The early retirement scheme proposed by TERA is but one "force management tool" with which to achieve workforce reduction targets. § 4403(a) and (b); ALCOAST 007/96. Whether that means should be employed by one service and not another, or for one individual and not another, is not a matter that can be judicially determined. *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993).

## *Agency Action*

By the same token, the Court's ruling on statutory construction necessarily affirms that same legal conclusion reached by the Board. Plaintiff contends that had the Coast Guard implemented TERA in October 1994, when he had been twice passed over for promotion, he would have been eligible for early retirement. *See* 14 U.S.C. § 283. He argued before the Board, as he has here, that TERA made him "eligible for retirement." Since implementation of the ALCOAST program was itself discretionary, even its retroactivity to October 1, 1994, would not have compelled Lieutenant Greek's retirement. Consequently, Plaintiff's argument before the Board for his eligibility for retirement again turned on whether the implementation of

TERA within the Coast Guard was permissive or mandatory.

In denying plaintiff's request for "fifteen-year retirement," the Board reviewed applicable authorities and determined that TERA merely left to the discretion of the Secretary whether to adopt the statute's early retirement provisions. AR I at 12. Therefore, it followed that Greek was not "eligible for retirement" in the language of 14 U.S.C. section 283. AR I at 13.

The Coast Guard's interpretation of a statute is reviewed by this Court *de novo*. *Ishida v. United States*, 59 F.3d 1224, 1229 (Fed. Cir.1995). The Court is obligated to uphold an agency's statutory construction provided the resulting interpretation is reasonable and does not contravene clearly discernable legislative intent. *Id.* In deciding jurisdiction, we have come to the same legal conclusion that the Board did. Consequently, if called upon to do so, we would affirm the Board's result on the merits.

### CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has not established that the Court has jurisdiction over the subject matter. Defendant's motion to dismiss is hereby GRANTED.