**2**

Robert L. LOEH, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–486C.

United States Court of Federal Claims.

Originally Filed June 28, 2002.

Reissued for Publication July 11, 2002.*

---

Robert L. Loeh, Ft. Leavenworth, KS, plaintiff, pro se.

John N. Maher, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. LT Bradley A. Appleman, JAGC, U.S. Navy, of counsel.

### ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss or, alternatively, for summary judgment. The issue to be decided is whether plaintiff is entitled to judgment amounting to the immediate issuance of military retirement pay from the United States Department of the Navy (the "Navy") pursuant to 10 U.S.C. §§ 629, 632, 642, and 6323 (2000). Alternative issues to decided are whether the Navy violated its own regulations for processing retirement requests; the Administrative Procedure Act (the "APA"), 5

* This order is being reissued for publication at defendant's request by filing of July 8, 2002.

U.S.C. § 551 (2000); or plaintiff's right under the Constitution. The court has considered each of the four briefs filed by plaintiff, has granted each of plaintiff's three motions to supplement those briefs, and deems argument unnecessary.

## FACTS

The facts are drawn principally from the complaint and its attachments. *See* RCFC 10(c). Robert L. Loeh ("plaintiff") currently is incarcerated at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. On January 23, 2001, pursuant to a pretrial agreement, plaintiff was convicted of violating various provisions of the Uniform Code of Military Justice (the "UCMJ") and was sentenced to dismissal, confinement for ten years, and forfeiture of all pay and allowances.[1] On June 14, 2001, plaintiff applied for retirement and addressed his petition to the Secretary of the Navy (the "Secretary") via the Chief of Naval Personnel in accordance with the Secretary of Navy Instruction ("SECNAVINST") 1811.3M (1989). On July 31, 2001, the convening authority approved plaintiff's sentence, suspending all confinement in excess of five years, as well as six months' forfeitures, which were paid directly to plaintiff's wife.

After having received no response to his retirement request, plaintiff, on August 9, 2001, telephoned the Chief of Naval Personnel and spoke with Lieutenant Commander Janssen, who informed plaintiff that the Chief of Naval Personnel did not forward his request to the Secretary, because plaintiff's "dismissal from the naval service had not completed appellate review." Compl. filed Aug. 21, 2001, ¶ 9. On August 8, 2001, the Chief of Naval Personnel had sent plaintiff a letter by facsimile transmission to the same effect. A copy of this letter is attached to the complaint.

The letter states, in relevant part:

Per reference . . . consideration of your retirement request is not appropriate at this time, as your dismissal from naval service has not completed appellate review. Should the awarded dismissal not be approved, you are invited to resubmit your voluntary requirement [sic] request.

Arguing that plaintiff's claim does not rest upon a specific money-mandating statute and that his claim otherwise is not ripe for judicial review, defendant requests a dismissal of plaintiff's complaint for lack of jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim upon which relief can be granted under RCFC 12(b)(4).

## DISCUSSION

1. When a federal court reviews the sufficiency of the complaint, whether for failure to state a claim or for lack of subject matter jurisdiction, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* The court follows "the accepted rule that a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.1997). The court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must indulge all reasonable inferences in favor of the non-movant, *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995). Therefore, a motion to dismiss must be denied if relief can be granted "under any set of facts that could be proved consistent with the allegations." *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

Complaints filed by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30

---

1. The difference between dismissal and discharge is one of terminology, not of substance. *United States v. Bell*, 8 U.S.C.M.A. 193, 194–95, 1957 WL 4684 (1957) ("Whether the sentence is one of dismissal or dishonorable discharge, the manifest intention of the court-martial is to separate the accused from the service under conditions of dishonor.").

**4**

L.Ed.2d 652 (1972) (per curium). Nevertheless, the leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements. *Kelley v. Sec'y*, 812 F.2d 1378, 1380 (Fed.Cir. 1987).

The complaint generally alleges subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), which authorizes the Court of Federal Claims to

> render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

This jurisdiction extends only to claims for money damages and must be construed strictly. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). While conferring jurisdiction, the Tucker Act does not create a substantive right enforceable against the United States for monetary damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Testan*, 424 U.S. at 398, 96 S.Ct. 948. "Instead, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages." *Khan v. United States*, 201 F.3d 1375, 1377 (Fed.Cir.2000).

Three theories of relief can be extrapolated from the complaint: (1) The Government violated defendant's rights under the Constitution; (2) the Government failed to observe its own regulations for processing retirement requests in violation of those regulations and the Administrative Procedure Act, 5 U.S.C. § 551 (2000) (the "APA"); and (3) the Government violated statutes and regulations that entitle plaintiff to retirement pay.

 No doubt exists that the court lacks jurisdiction over the claims brought under the first theory. The Due Process Clause, which provides that no person shall be deprived of property without due process of law, does not require the payment of money damages so as to permit jurisdiction in the Court of Federal Claims.[2] *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) (citing *Inupiat Cmty. of the Arctic Slope v. United States*, 230 Ct.Cl. 647, 662, 680 F.2d 122, 132 (1982)). Similarly, the court has no jurisdiction to entertain plaintiff's arguments that forfeiture of his retirement pay would constitute an "excessive fine" in violation of the Eighth Amendment, that it would deny him equal protection of the law, and that it would deprive him of a right to trial by jury. *See Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988) (Court of Federal Claims lacks jurisdiction over suits against Government for discrimination, whether stated as violation of equal protection, due process, or otherwise); *Rosano v. United States*, 9 Cl.Ct. 137, 142 (1985) (Court of Federal Claims has jurisdiction only with respect to constitutional claims founded on Takings Clause of Fifth Amendment, as other amendments to the Constitution do not mandate payment for violations), *aff'd*, 800 F.2d 1126 (Fed.Cir.1986).

 Second, plaintiff's complaint alleges that the Navy violated its own administrative procedures when it declined to take action on his request for retirement. As an initial matter, the APA neither confers jurisdiction on the Court of Federal Claims nor mandates the payment of money and, thus, does not provide a basis for suit. *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997); *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1559 (Fed.Cir.1988). *But see McGrath v. United States*, 207 Ct.Cl. 978, 979, 1975 WL 22997 (1975) (dismissing action as non-reviewable under § 701(a)(2) where "agency action is committed to agency discretion by law").[3]

---

2. Although plaintiff asserts that he "is not basing his claim on a 5th Amendment violation," Pl.'s Br. filed Jan. 29, 2002, at 5, his complaint states that the Navy "deprived him of property (military retirement) without due process of law in violation of the 5th Amendment to the Constitution." Compl. ¶ 1.

3. Although plaintiff specifically alleges a violation of 5 U.S.C. § 551, the definitions provision of the APA, plaintiff also cannot invoke jurisdiction or state a claim under 5 U.S.C. § 702, providing a right of review to persons aggrieved by agency action.

Further, these violations are not actionable under the Tucker Act because none of the regulations cited by plaintiff fairly can be read to mandate the payment of money. Plaintiff argues that SECNAVINST 1811.3M required the Chief of Naval Personnel to forward his request to the Secretary of Defense. That instruction provides that the Chief of Naval Personnel "will forward to the Secretary requests for voluntary retirement ... from officers identified ... as being of limited assignability, or whose continued service is not, due to conditions beyond their control, clearly in the interest of national security." Assuming, *arguendo,* that plaintiff falls within its scope, the instruction mandates the forwarding of his request, not the payment of money. Moreover, were his request forwarded pursuant to the instruction, the Secretary, as discussed in the next section, would still have enjoyed unreviewable discretion to approve or deny the request.[4] Consequently, the failure of the Navy to observe non-money-mandating regulations is not actionable in the Court of Federal Claims.

■■■ Plaintiff cites a number of statutes and regulations that he contends entitle him to retirement and retirement benefits, specifically, 10 U.S.C. § 6323; SECNAVINST 1811.3M; and 10 U.S.C. §§ 629, 632, and 642.

Even if plaintiff were entitled to retirement under any of these provisions, he could not state a claim for retired pay. "Retirement" in the context of the military is something of a misnomer—retired pay, unlike a typical pension, is not simply compensation for past services, but also "reduced compensation for reduced current services." *McCarty v. McCarty,* 453 U.S. 210, 221–22, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). To be retired is to be placed on the retired list, subject to recall to active duty. 10 U.S.C. §§ 688. A retired officer therefore remains a member of the armed forces and remains subject to the UCMJ. 10 U.S.C. § 802(a)(4); *McCarty,* 453 U.S. at 221–22, 101 S.Ct. 2728. A retired officer may also forfeit his retired pay if court-martialed. *Id.* at 222 & n. 14, 101 S.Ct. 2728; *Hooper v. United States,* 164 Ct.Cl. 151, 157–58, 326 F.2d 982, 986–87 (1964).[5] Plaintiff's sentence, a copy of which was submitted by him with his January 29, 2002 brief, includes a forfeiture of all pays and allowances.[6] Accordingly, whether plaintiff was, is, or otherwise will be entitled to retirement during the service of his sentence does not overcome the fact that he has forfeited such pay as part of his sentence. The court lacks jurisdiction over his claims.

2. Because he has proved himself to be an avid student of the record, the court further discusses the merits of plaintiff's claims, concluding that he is not entitled to retire-

---

4. Plaintiff also argues, without explanation, that his request should have been forwarded to the Secretary under SECNAVINST 5216.5D, which is the Navy Correspondence Manual and sets uniform standards for the preparation and management of correspondence.

5. In *Barker v. Kansas,* 503 U.S. 594, 599–600, 112 S.Ct. 1619, 118 L.Ed.2d 243 (1992), the Supreme Court determined that this characteristic was not sufficient to differentiate military retired pay from state retirement benefits so as to tax one and not the other without violating the doctrine of intergovernmental tax immunity. *Barker* did recognize that retired pay is calculated according to years served and thus "bears some of the features of deferred compensation." *Id.* at 599, 112 S.Ct. 1619 (quoting *McCarty,* 453 U.S. at 223 n. 16, 101 S.Ct. 2728). More importantly, however, *Barker* 5 recognized that "[m]ilitary retirees unquestionably remain in the service and are subject to restrictions and recall." 503 U.S. at 599, 112 S.Ct. 1619; *see also id.* at 602, 112 S.Ct. 1619. Contrary to plaintiff's argu-

ments, nothing in *Barker* suggests that retired pay cannot be terminated by a court-martial.

6. A forfeiture of pay that is included in a sentence of court-martial takes effect on the date on which the sentence is approved by the convening authority or 14 days after the date on which the sentence is adjudged, whichever is earlier. 10 U.S.C. § 857(a)(1). Regardless of his adjudged sentence, plaintiff's sentence of confinement operates to forfeit all pay and allowances that are due to him during his confinement. 10 U.S.C. § 858b(a); Rule of Courts–Martial (RCM) 1003(b)(2). Pursuant to 10 U.S.C. § 858b(b) and RCM 1108(b), the convening authority suspended plaintiff's forfeitures for six months. Plaintiff's arguments that 21 U.S.C. § 862 (2000) (denying "federal benefits" for specific periods to individuals convicted of certain drug trafficking and possession offenses), and 5 U.S.C. § 8312 (2000) (denying retirement pay to individuals convicted of certain offenses), limit the grounds on which pay can be forfeited are contradicted flatly by 10 U.S.C. § 858b.

ment pay because he is not entitled to retirement. 10 U.S.C. § 6323(a)(1) generally governs requests for retirement:

An officer of the Navy or the Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, may, in the discretion of the President, be retired on the first day of any month designated by the President.

The statute provides that, after certain conditions have been satisfied, a servicemember may request to be retired and that the President may, in his discretion, grant the request. The statute is permissive and discretionary, not mandatory, and cannot "fairly be interpreted as mandating compensation by the Federal Government." *Testan,* 424 U.S. at 400, 96 S.Ct. 948; *see also Cedillo v. United States,* 124 F.3d 1266, 1268 (Fed.Cir. 1997) (concluding that almost identical statute for Air Force servicemen was discretionary, not mandatory).

Plaintiff also insists that he is entitled to retirement under SECNAVINST 1811.3M, which is the Navy's policy governing voluntary retirement of officers. SECNAVINST 1811.3M, subparagraph 4(e), provides that requests for voluntary retirement in cases where court-martial charges have been preferred and not disposed of shall be denied except as provided in SECNAVINST 1920.6A and 1910.4A, which deal with administrative separations of officers and enlisted men, respectively. The August 8, 2001 letter from the Chief of Naval Personnel returning plaintiff's request for retirement without action referenced SECNAVINST 1811.3M and the appeal of plaintiff's dismissal. Contrary to plaintiff's allegations, the denial of his request for retirement was in conformity with, and not in violation of, SECNAVINST 1811.3M.

Although not mentioned in his complaint, plaintiff argues in his brief that the discretion afforded the Secretary in 10 U.S.C. § 6323 effectively is removed by 10 U.S.C. §§ 629, 632, and 642, which mandate retirement for officers who are twice passed over for promotion. Because plaintiff is proceeding *pro se,* the court will address this argument as if it properly were raised in plaintiff's complaint. Section 632(a) provides, in pertinent part:

[E]ach officer of the Navy on the active-duty list who holds the grade of lieutenant or lieutenant commander, who has failed of selection for promotion to the next higher grade for the second time and whose name is not on a list of officers recommended for promotion to the next higher grade shall—

. . .

(2) if he is eligible for retirement under any provision of law, be retired under that law on the date requested by him and approved by the Secretary concerned, which date shall be not later than the first day of the seventh calendar month beginning after the month in which the President approves the report of the board which considered him for the second time . . . . [7]

The parties agree that when plaintiff failed of selection for promotion by the fiscal year 2000 promotion board, which convened on February 23, 1999, and was approved on May 20, 1999, he was considered to have twice failed of selection for promotion under section 632.[8] *See* 10 U.S.C. § 629(c)(2). The parties further agree that plaintiff was not currently on a list of officers recommended for promotion to the next higher grade. Therefore, if eligible for retirement, plaintiff should have been retired by December 1, 1999.[9]

---

7. Section 632(a)(3) provides that an officer who has twice failed of selection for promotion, who is not on a list of officers recommended for promotion, but who is within two years of qualifying for retirement, shall be retained on active duty until he is qualified for retirement and then retired, unless he is sooner retired or discharged under another provision of law. This mandate, however, is qualified by 10 U.S.C. § 639, which provides that the Secretary may delay retirement pending completion of a court-martial.

8. Plaintiff disagrees to the extent that he maintains that this was the fiscal year 1999 promotion board and, further, that it was approved no later than June 1, 1999. The parties' disagreement on this issue is immaterial to the court's decision.

9. The court lacks jurisdiction to determine whether, if not eligible for retirement, plaintiff should have been discharged under section 632. Such a claim would not assert an entitlement to money, as does his claim for retirement pay.

In fact, plaintiff never was "eligible for retirement under any provision of law." Section 6323(a)(1) requires that plaintiff have completed 20 years of active service. Plaintiff's May 7, 2002 brief states that his active duty service began on February 3, 1981, and that he would have attained 20 years service by February 3, 2001. Plaintiff's January 23, 2001 conviction, however, terminated his accrual of creditable service. Under 10 U.S.C. § 972(b)(3), any period in which an officer "is confined by military or civilian authorities for more than one day in connection with a trial, whether before, during, or after the trial . . . may not be counted in computing, for any purpose other than basic pay . . ., the officer's length of service."

In his response to the court's order for supplemental briefing, plaintiff claims to have been eligible for retirement under Temporary Early Retirement Authority ("TERA"). Plaintiff erroneously relies on 10 U.S.C. § 12731a, which applies to members of a reserve component of the armed forces. That section was enacted as part of the National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484, § 4417, 106 Stat. 2315, 2716–17 (1992) (as amended). In the same statute, Congress also provided TERA for active duty servicemembers. *Id.* § 4403, 106 Stat. at 2702–04 (codified as amended as a note to 10 U.S.C. § 1293 (2000)). That authority allows the Secretary to "apply the provisions of [section 6323] to a regular or reserve commissioned officer with at least 15 but less than 20 years of service." *Id.* § 4403(b)(2)(A). In order to be eligible under this section, the servicemember must have registered with the Secretary of Defense for assistance in pursuing public and community service job opportunities under 10 U.S.C. § 1143a. *Id.* § 4403(c). Neither plaintiff's briefs, nor any of the attachments thereto, contain any indication that he was so registered.

The Court of Federal Claims has held that TERA statutes are not money-mandating, even when combined with statutes that require retirement for eligible servicemembers. *Greek v. United States,* 44 Fed.Cl. 43 (1999), dealt with a Coast Guard officer who twice failed selection for promotion and claimed that he was entitled to retirement under a statute analogous to 10 U.S.C. § 632. The court rejected plaintiff's argument that eligibility under TERA mandated retirement. *Greek* recognized that TERA itself is cast in discretionary terms and that the stated purpose of TERA "is to provide the Secretary of Defense . . . a temporary additional force management tool with which to effect the draw down of military forces." *Id.* at 48 (quoting 10 U.S.C. § 4403(a)). Were TERA sufficient to trigger mandatory retirement under section 632(a)(2), the Secretary would be forced to retire all officers with 15 years' service who twice failed of promotion. Such a construction would make TERA an entitlement, not a force management tool. *See Greek,* 44 Fed.Cl. at 44 ("While reducing force levels, the services must ensure readiness, strike the proper balance among the various ranks, preserve critical skills, retain specialities, meet recruitment goals, and maintain morale."). Moreover, under section 632(a)(3), servicemembers with 18 years' service who twice fail of promotion are entitled to remain on active duty until they reach 20 years. Plaintiff's construction of TERA effectively would negate this entitlement.

Accordingly, plaintiff is not entitled to retirement based on his having been twice failed of selection for promotion. *See Greek,* 44 Fed.Cl. at 48–49. Instead, the decision to retire plaintiff lies within the discretion of the Secretary. Although plaintiff suggests that the pendency of his dismissal appeal has no bearing on his request for retirement, section 6323 provides broad discretion to determine what is and is not relevant in determining whether to grant retirement. The Court of Federal Claims cannot review the merits of the Navy's decision. *Cedillo,* 124 F.3d at 1268; *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993).

Plaintiff expresses concern that the ultimate decision regarding his retirement may be affected by his dismissal. The court addresses only plaintiff's allegation that at present he is entitled to retirement. The court has no occasion to address the legal consequences should plaintiff's dismissal be affirmed. *Cf. Cedillo,* 124 F.3d at 1268 (upholding denial of retirement benefits based

8

on discharge under other than honorable conditions). To the extent that plaintiff's complaint demands such an adjudication, it is dismissed for lack of jurisdiction as unripe.[10]

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of jurisdiction.

**IT IS SO ORDERED.**

No costs.

---

10. Plaintiff expresses particular concern over 10 U.S.C. § 12740(1) (2000), which provides that a member of a reserve component who is sentenced to dismissal by a court-martial is not eligible for retired pay for non-regular service under 10 U.S.C. § 12731 (2000). As discussed above, plaintiff is not a member of a reserve component. Plaintiff nevertheless argues that application of this provision to him would constitute breach of a contractual relationship that exists between the Navy and himself. According to plaintiff, the signing of his Oath of Appointment on September 1, 1991, created a contractual relationship by which the Navy can deny him retirement only if he is found guilty of a crime set out in 5 U.S.C. § 8312 (2000). This argument cannot help plaintiff, because a servicemember's entitlement to pay is statutory, not contractual. *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961).